KENNEDY, Justice.
Guthrie Enterprises, Inc. (“Guthrie”), which does business as “Windmill Beverages,” filed an action against the City of Decatur, (the “City”), seeking a declaration that the term “gross receipts” in the Code of Decatur, Alabama, § 2.5-39(7), does not include Alabama’s tax on the liquor, Ala. Code 1975, § 28-3-200 et seq., that Guthrie sells at retail. That City ordinance charges a “license tax of ten (10) percent of the gross receipts of [Guthrie’s] business derived from the sale of all alcoholic beverages, except beer and table wine.” Guthrie’s action also seeks a refund of taxes it claims were overpaid pursuant to that ordinance. The trial court entered a summary judgment for the City on both Guthrie’s request for declaratory relief and its claim for a tax refund, and Guthrie appeals.
To explain what the dispositive issue in this case is, we must first explain the statutory and factual background of this case. Liquor taxes, not taxes on other alcoholic beverages, are specifically involved in Guthrie’s action, although we refer to other taxes in discussing this case. Guthrie sells liquor at retail, in the liquor’s original container, for off-premises consumption; Guthrie, accordingly, operates, for purposes of this appeal, in everyday language, a “package store.” Until this Court’s decision in Broadwater v. Blue & Gray Patio Club, 403 So.2d 209 (Ala. 1981), only Alabama’s Alcoholic Beverage Control Board (“ABC Board”) stores could sell liquor at retail in its original container and for off-premises consumption, although certain properly licensed bars and restaurants could sell drinks containing liquor. The Broadwater decision allowed for the off-premises retail sale of liquor in its original container by entities other than ABC Board stores.
Retail sellers of liquor, like Guthrie, buy the liquor they sell from the ABC Board. When Guthrie purchases that liquor for retail sale, it pays a state liquor tax totaling 56% of the purchase price of the liquor. See § 28-3-200 et seq. For example, on a purchase of liquor in which the ABC Board selling price of the liquor is $10.00, Guthrie would pay the ABC Board store $15.60— $10.00 for the liquor and $5.60 for the state liquor tax. The .City places a 10% tax on the “gross receipts” of the amount of Guthrie’s liquor sales. According to the City, if Guthrie sold the liquor that it bought in the example above to a consumer for $20.00, then the City’s tax would be $2.00, which, according to the City, is 10% of the “gross receipts” of the sale. Guthrie argues that the amount of the state liquor tax should be excluded from the calculation of “gross receipts.” That is, according to Guthrie, again using the example above, it should be allowed to subtract an amount equal to the $5.60 state *1360 liquor tax from the $20.00 sale price, for the purpose of calculating the “gross receipts”; Guthrie would thus pay, according to its argument, the 10% gross receipts tax on $20.00 minus $5.60, or $14.40, instead of $20. Guthrie’s interpretation, if we accept it, will result in no one’s paying the City the 10% tax on the 56% state liquor tax (10% on the $5.60 in the example).[1]
With the arguments of the parties as to the result they seek to obtain in mind, consider now what we must analyze in this case. Guthrie does not challenge the authority of the City to levy the 10% tax, nor does Guthrie challenge its imposition except as to the state liquor tax. Although the disputed term “gross receipts” is in the City’s tax ordinance, there is nothing in the City’s tax ordinance that gives guidance as to what the City meant to include in the term “gross receipts.” More importantly, without regard to what the City meant, there is case law, concerning the state liquor tax, which must be addressed in this analysis. As we explain presently, the dis-positive issue in this case concerns the state liquor tax — the 56% tax referred to earlier — not the City’s ordinance. The nature of the City’s tax might be important to issues concerning Guthrie’s claim for a refund, but we do not address such issues in this opinion.
Whether the incidence of the state liquor tax falls on the ultimate consumer of the liquor or on the retailer when he buys the liquor from the ABC Board store is the dispositive issue in this case. That issue is dispositive, because if the state liquor tax is a consumer tax, then the amount of the state liquor tax included in the sale price to the consumer is not a “gross receipt” of Guthrie; that amount is simply the tax. If the incidence of the state liquor tax falls on the retailer, then the amount of the state liquor tax included in the sale price to the consumer is a gross receipt of the retailer, because the retailer is passing on the cost of the tax to the consumer in the form of a price increase, although the consumer is not necessarily the entity that the taxing statutes intended to bear that cost. Accordingly, Guthrie contends that the incidence of the state liquor tax falls on the ultimate consumer, but the City contends that the incidence of the state liquor tax falls on Guthrie, the retailer.
In S & L Beverages & Blends, Inc. v. Ritchie, 567 So.2d 341 (Ala.Civ.App.1990), the Court of Civil Appeals, in an almost identical factual situation, held that the state liquor tax of § 28-3-200 et seq. was a consumer tax, and this Court denied Rit-chie’s petition for certiorari review. The Court of Civil Appeals wrote:
“S & L Beverages and Blends, Inc. (S & L) filed a complaint in the circuit court against the Director of the Department of Revenue of Jefferson County and the members of the Jefferson County Commission (County), claiming that the County should not be permitted to charge its gross receipts tax on the forty-eight percent liquor taxes paid by S & L to the Alabama Alcoholic Beverage Control Board (ABC Board). [The 1988 amendment to § 28-3-203 is effective in Guthrie’s case, and it raises the total state liquor tax from 48% to 56%, the amount we discussed.] The County filed a counterclaim for all amounts due and owing to the County by S & L because of deductions of taxes paid to the ABC Board from gross receipts returns. The trial court entered summary judgment in favor of the County, holding that S & L ‘may not deduct from its gross receipts the amount of taxes it paid to the Alabama Alcoholic [Beverage] Control Board when it purchased the liquor it sells to its customers.’ S & L appeals. We reverse.
“The dispositive issue is whether the trial court erred in ruling that S & L may not deduct the liquor taxes paid to the ABC Board from its sales revenues be *1361 fore it determines the ‘gross receipts’ for purposes of payment of the County license tax and sales tax.
“The joint stipulation of facts reveals the following: (1) S & L is engaged in the retail sales of liquor for off-premises consumption in Jefferson County. (2) The Jefferson County Commission is authorized by legislative act to levy a ‘gross receipts tax’ on each person selling certain alcoholic beverages and drinks. (3) The Jefferson County Commission enacted a resolution which levies a tax equal to six percent of the ‘gross receipts’ on each person selling these certain alcoholic beverages.
[[Image here]]
“A determination of the dispositive issue necessitates a determination first of whether the taxes imposed on liquor sold by the ABC Board under §§ 28-3-200 through -205, Ala.Code 1975 (1986 Repl. Vol.), are excise taxes and, therefore, consumer taxes, or whether they are privilege taxes on the purchaser and, therefore, not consumer taxes. For a resolution we first look to the alcoholic beverage tax statutes.
“The statutes which presently control the taxation of beer and wine were enacted between 1979 and 1982, long after beer and wine were being sold by retailers other than the ABC stores. These statutes provide that the taxes are levied on the consumer, with the person paying the tax in the first instance, the retailer, acting as an agent for the state for the collection and payment of taxes. See Ala.Code 1975, §§ 28-7-16, 28-3-184, and 28-3-190.
“Statutes concerning the taxes on liquor were enacted by the legislature between 1943 and 1980, prior to the time that retailers were allowed to sell liquor to consumers for off-premises consumption, which was permitted in 1981 as a result of the supreme court’s decision in Broadwater v. Blue & Gray Patio Club, 403 So.2d 209 (Ala.1981). These statutes provide that the ABC Board shall not absorb the tax, but shall pass it on to the purchaser. The County contends that the use of the term purchaser indicates that it is a tax on the retailer, S & L, which is part of the cost of doing business, and cannot be passed on to the consumer. See Ala.Code 1975, §§ 28-3-200 through -205.
“This court, considering similar facts, recognized no distinction between beer and wine taxes and liquor taxes in the case of State Department of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ.App.1987), and found further that the intent of the legislature in the use of the term ‘purchaser’ in the statute was for the liquor taxes, as it was for the beer and wine taxes, to be on the ultimate consumer, not the retail stores buying at wholesale for resale. Any other interpretation would lead to double taxation, which ‘should be avoided whenever possible.’ Id. at 1115.
“Further, concluding that the tax was an excise tax and not a privilege tax, Presiding Judge Bradley, concurring specially, said:
“ ‘Taxpayer contends that the liquor tax is an excise tax and, therefore, a consumer tax. If denominated a consumer tax, the liquor tax would be passed on to the ultimate consumer as are the excise taxes on beer and wine. Consequently, taxpayer would be allowed to deduct the liquor tax from gross proceeds for sales tax computation. The Department contends that the statute intended the tax to be on the purchaser and not the consumer. It is my conclusion that the forty-eight percent tax is an excise tax, not a privilege tax as the Department contends.’
Id. at 1117.
“And, where the same case discusses the tax as a business expense, the majority said:
“ ‘The Department further argues that a rational basis for taxation distinction is created because package stores become the “purchasers” when they buy their liquor inventory from state stores. But in fact they are not the ultimate purchasers, and they should not be treated as such under a taxing arrangement that disallows their pass- *1362 mg the liquor tax on to the real ultimate purchaser, the consumer, as a tax instead of a business expense.’
Id. at 1116.
“Consequently, we find in the instant case that the liquor taxes imposed by §§ 28-3-200 through -205 are consumer taxes and may properly be deducted from S & L’s gross receipts for purposes of computation and payment of the county license tax and sales tax.”
567 So.2d at 341-42. The only difference between the tax in S & L and the tax in this case is that the gross receipts tax in S & L was a county tax, not a tax imposed by a municipality. We find no significance in that distinction for the purposes of our analysis in this case.
As the Court of Civil Appeals suggests in S & L, the holding in S & L was based in part on Presiding Judge Bradley’s special concurrence in State Department of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ.App.1987). Judge Bradley wrote in that case:
“ ‘Package store’ retail liquor establishments are a relatively new creature in Alabama, coming into existence after 1981 by virtue of judicial interpretation of sections 28-3A-1 through -26, Code 1975. See, Broadwater v. Blue & Gray Patio Club, 403 So.2d 209 (Ala. 1981). The Department's regulations are silent as to how they should be taxed.
“Taxpayer contends that the liquor tax is an excise tax and, therefore, a consumer tax. If denominated a consumer tax, the liquor tax would be passed on to the ultimate consumer as are the excise taxes on beer and wine. Consequently, taxpayer would be allowed to deduct the liquor tax from gross proceeds for sales tax computation. The Department contends that the statute intended the tax to be on the purchaser and not the consumer. It is my conclusion that the forty-eight percent tax is an excise tax, not a privilege tax as the Department contends. The taxes levied on beer and wine are considered by the Department to be excise taxes. The Department cites to Ross Jewelers, Inc. v. State, 260 Ala. 682, 72 So.2d 402 (1953), in its regulations regarding beer and wine taxes. I see no distinction between these taxes and the liquor tax.
“Ross involved a Federal excise tax commonly referred to as a ‘luxury tax.’ The court was faced with interpreting whether gross proceeds should include this tax for the computation of State sales tax. The State there contended the tax was merely a cost of doing business and that, as such, State sales tax could be computed on its inclusion in the gross proceeds. The court disagreed, stating:
“ ‘[T]he Federal Retail Excise Tax is not imposed upon the retailer as a privilege tax for doing business, but is specifically imposed upon the article sold. It is to be included in the price to the purchaser or consumer and therefore collected from the purchaser or consumer and held by the retailer to be accounted for and remitted to the Federal Government. Under the circumstances it is a mistake to say that the Federal Retail Excise Tax is a part of the expense of sale made by the retailer, because in no way is he obligated to make such outlay and in no way is he responsible for the tax, except that he is a conduit through whom the tax passes from his purchaser to the Federal Government.’ ”
“Ross, supra.
“Ross can be distinguished from the instant case in that the sale of liquor involves a wholesale/retail relationship not found in Ross. I do not see that this difference presents any problem. The merchandise sold in Ross was not part of a highly regulated industry as are the sales of liquor. The State of Alabama requires the existence of the wholesale situation in retail liquor sales. The existence of the wholesale situation does not present a problem in sales of beer or wine.”
534 So.2d at 1117.
The City forthrightly concedes that S & L is “substantially identical” to this case and that its holding that the state liquor tax is a consumer tax, if undisturbed by *1363 this Court, would lead to the conclusion, explained above, that Guthrie can exclude an amount equal to the State liquor tax from the calculation of gross receipts for the City’s tax described earlier. The City asks this Court to overrule S & L, because of the following arguments.
First, the City cites City of Birmingham v. Alabama Gas Corp., 564 So.2d 416 (Ala. 1990); Merchants Cigar & Candy Co. v. City of Birmingham, 245 Ala. 587, 18 So.2d 137 (1944); and Pure Oil Co. v. State, 244 Ala. 258,12 So.2d 861 (1943), for the following propositions: the liquor tax is not imposed directly on the consumer, unless the consumer is the immediate purchaser from the ABC Board; the liquor tax is simply levied upon whoever the immediate purchaser from the ABC Board is; accordingly, Guthrie is the party upon whom the incidence of the tax falls; therefore, Guthrie must include the state liquor tax in its computation of gross receipts.
In City of Birmingham v. Alabama Gas Corp., this Court addressed the meaning of “gross receipts” in Birmingham’s “license tax.” Birmingham interpreted gross receipts “to include the amounts Alabama Gas Corporation is required to collect from its customers for the State of Alabama pursuant to Code § 40-21-80 et seq., the Utility Gross Receipts Act.” 564 So.2d at 416. The Utility Gross Receipts Act specifically states that all taxes paid pursuant to it are conclusively presumed to be “a direct tax on the purchaser precollected for the purpose of convenience and facility only.”
§ 40-21-86. Birmingham nevertheless argued that the amounts collected pursuant to that tax were “gross receipts” of Alabama Gas Corporation for the purposes of the license tax. The trial court permanently enjoined Birmingham from including in its license tax computation the utility gross receipts tax, and this Court affirmed. To support its arguments, the City cites to this particular language in City of Birmingham:
“[Merchants Cigar and Ross Jewelers\ distinguished between a tax levied on a seller (which tax is not required to be passed on to the purchaser) and a tax levied on the consumer. That is, if the tax was imposed directly on the consumer, with the seller acting merely as a conduit for the state, then the revenues generated were not included in the seller’s ‘gross receipts’ in computing the Alabama sales tax.”
564 So.2d at 416-17.
In Merchants Cigar, a tobacco wholesaler argued that the amount paid the State and the City of Birmingham for a stamp tax that the wholesaler passed on to the tobacco retailer should not be included in “gross receipts” for the purposes of a Birmingham license tax. In ruling for Birmingham, the Court held that the tax was levied on “the seller as any other tax against him.” 245 Ala. at 588, 18 So.2d at 137. The City indicates that the Court’s rationale for that holding was simple: the tax was on the wholesaler, it argues, because “there is no law or ordinance which requires [the wholesaler] to collect a similar amount from the purchaser, by adding it to the sales price, or otherwise, as is required under the General Sales Tax law.” Id. The City contends that similarly, in this case, there is no law that requires Guthrie to collect the liquor tax from the consumer.
For the sake of precision, we quote the pertinent portion of Pure Oil:
“The State sued appellant to recover alleged balances of taxes due for the fiscal year ending September 30, 1935, under License Schedule 74, § 361, of the General Revenue Act of 1919.... The pertinent part of the present statute reads: ‘Each person, firm, corporation, or agency selling illuminating, lubricating, or fuel oils at wholesale, that is to say in quantities of twenty-five gallons or more, shall pay to the department of revenue for the use of the state, within two weeks from the beginning of the fiscal year, the sum of one half of one percent on his gross sales for the preceding fiscal year....’
“The case was tried on an agreed statement of facts. What constitutes ‘gross sales’ as a basis for computing the tax is the real question at issue. The
*1364 taxpayer, in making returns from year to year, deducted or, looked at from its viewpoint, did not include certain items. Among them, to quote from appellant’s brief, were:
“ ‘1. Certain amounts representing ...’a Federal excise tax of four cents per gallon upon the sales of lubricating oils by manufacturers, producers or importers.
“ ‘2. Certain amounts representing excise taxes levied by the State of Alabama. ...’ More accurately these items represent the tax levied by Section 27, p. 169, General Revenue Acts of 1927, which, in part, reads: ‘Every distributor, retail dealer or storer of lubricating oils as herein defined shall pay an excise tax of Two Cents (2 cents) per gallon upon the selling, distributing or withdrawing from storage for any use lubricating oils as herein defined in this State....’
“ ‘3. The amount of certain inspection fees on kerosene paid to the State Department of Agriculture of the State of Alabama_’ This is an inspection fee of one-half cent per gallon on all kerosene or illuminating oils sold in Alabama to be paid by the first seller in Alabama. It is in the nature of a service charge to meet expenses of inspection, etc., for the protection of the public.
“The statement of facts discloses that the taxpayer, in the conduct of its business, set upon on its books items 1, 2 and 3, as distinct from the net sale price of each sale, and by invoice to the purchaser, disclosed the amount of taxes entering into the gross sum to be paid. Appellant insists that it thus becomes the collector of these taxes from the purchaser, all accruing by reason of the sale, and passed on to the purchaser; and to include them in ‘gross sales’ is to levy a tax upon a tax.
“The tax here sued for is a privilege tax levied on the wholesaler, measured by his ‘gross sales.’ ...
“In essence appellant seeks deductions from his ‘gross sales’ for other items of taxation levied against him and paid by him. None of these items are levied against the purchaser. He is not the taxpayer. Appellant could not collect a tax from him, as such. They are unlike our sales tax upon retailers. True, the economic burden of the tax is generally passed on to the purchaser, and finally to the consumer. We make no criticism of making invoices disclose the tax burdens of the seller, rendering the public tax-conscious, maybe reacting on legislative bodies when framing tax laws. But in fact and in law these other tax items are legal obligations of appellant, constituting, in economic sense, part of the overhead of the seller’s business, as does the tax here sued for. Invoices or bookkeeping cannot change the fact that the purchaser is paying the sale price fixed by the seller, nothing more nor less. They cannot stipulate the purchaser into the position of a tax collector. The tax is payable to the State only, and by the seller. In the absence of statute authorizing such deductions, the ‘gross sales’ must include what the words import, namely, the gross prices paid for the products named when purchased in wholesale quantities as defined by the statute.”
244 Ala. at 260-61, 12 So.2d at 862-63. (Citations omitted.)
Pure Oil is probably distinguishable from this case; if it is not distinguishable, then its persuasive value is significantly diminished in relation to this case by the following considerations. The disputed taxes in Pure Oil were levied directly and indisputably against the taxpayer, a wholesaler in oils; the taxpayer agreed that the taxes were levied directly against it. 244 Ala. at 260-61, 12 So.2d at 862-63. Nevertheless, it sought to deduct the amount of the taxes levied against it and paid by it from the “gross sales” figure. More precisely, Pure Oil Company sought to deduct from the “gross sales” figure an amount equal to the taxes levied specifically against it and paid by it, which taxes the Court considered to be the equivalent of business expenses, “legal obligations of [Pure Oil Company], constituting in economic sense, part of the overhead of the *1365 seller’s business.” 244 Ala. at 261, 12 So.2d at 863.
Based on the substance of the above discussion of City of Birmingham v. Alabama Gas Cory., Merchants Cigar, and Pure Oil, the City makes its arguments described above. All the City’s arguments actually indicate is that the liquor tax is a sales tax, which is apparent from the face of the statutes. §§ 28-3-200 through -205. The statutes enacting the liquor tax are not as clear in their imposition of the incidence of that tax, however, as the City and Guthrie argue the statutes are. The statutes do not expressly provide whether it is the consumer upon whom the incidence falls, in which case the retailer Guthrie acts as an agent for the State in collecting from the consumer the tax, a situation similar to that in Boss Jewelers, or whether it is the retailer upon whom the incidence of the tax falls. Stated another way, the statutes do not on their face indicate whether the tax is upon the seller of the liquor, a situation more similar to that in Merchants Cigar and Pure Oil, or upon the sale of the liquor, a situation perhaps more similar to that in Ross Jewelers.
No doubt, before Broadwater these liquor tax statutes placed the incidence of the tax upon the consumer; that is necessarily true, because then there was no retailer for the tax to be imposed upon. The Legislature has taken no action since Broadwater to clarify upon whom — the retailer or the consumer — the incidence of the tax falls. Guthrie argues that the Legislature’s post-Broadwater failure to amend the statutes to make the incidence of the tax expressly fall upon the retailer indicates that the Legislature intended for the incidence of the tax to continue to fall upon the consumer. The City responds to that argument by contending that the Legislature intended the incidence of the tax to fall upon whoever purchased the liquor from the ABC store and that if the Legislature had intended otherwise it would have amended the liquor tax statutes to say so. Both arguments contain some merit. Another factor to consider in regard to the lack of legislative action is not mentioned by either of the parties — the legislature has had time to act in response to the Court of Civil Appeals’ ruling in S & L, but it has done nothing regarding changing the statutes to indicate that it disagrees with that case.
Although this is a fairly close call, in the final analysis, we conclude that these arguments by the City are not sufficiently meritorious for us to overrule S & L.
The City argues that there is language that supports its position found in §§ 28-3-202(b), -203(b), -204(b), and -205(c), which state that “[t]he markup as currently established by the [ABC Board] on spirituous or vinous liquors shall not be reduced by the [ABC Board] for the purpose of absorbing the tax levied by this subsection, it being the intention of this provision that the said tax shall be passed on to the purchaser.” The City contends that that language indicates that the incidence of the tax is upon the immediate purchaser of the liquor only.
We disagree. We find nothing to indicate that the word “purchaser” means that the legal incidence of the tax necessarily falls on the immediate purchaser only; if the liquor taxation statutes on their face indicated that the word “purchaser” meant immediate purchaser only, then we could have resolved this case in short order. Indeed, the word “purchaser” is used throughout many taxation statutes and in some instances apparently refers to the consumer, see § 40-23-26, but in other instances appears to refer both to consumers and to wholesalers and retailers, see the first paragraph of § 28-3-184(b).
The language the City refers to has nothing to do with explaining whether the incidence of the tax falls on the consumer or on retailers like Guthrie; instead, it prohibits the ABC Board from reducing the price it charges for liquor to absorb the tax levied by the various subsections. For example, assume that a subsection levied a 10% tax and that the ABC Board was selling a certain bottle of liquor for $10. That language the City cites prohibits the ABC Board from reducing the price of the bottle of liquor in the example to $9.00 (the 10% *1366 tax on $10 = $1, which the ABC Board might cut from the $10 sales price) to absorb the effect of the tax.
Guthrie argues that because other taxation statutes expressly state that the incidence of the tax is on the consumer and this one does not, the incidence of the liquor tax is not on the consumer. Cf. § 28-3-200 through -205 with §§ 40-23-26, 40-17-31, 40-21-82, 40-21-86, 40-25-2(f), and 40-26-16. For that matter, the beer tax (the tax on “malt or brewed beverages”) is also expressly a tax on the consumer, § 28-3-184. However, in the beer tax and in the other taxes that the City cites, it is necessary as a practical matter to expressly require that the entity who provides the service or sells the good to the consumer is also the entity to collect that tax from the consumer. For example, a beer wholesaler buys the beer it sells from the beer manufacturer. The beer wholesaler sells the beer to the retailer, who in turn sells it to the consumer. The ABC Board — the State — is not directly involved in any of the sales transactions. Accordingly, the beer taxation statute must necessarily and expressly provide for the incidence and method of collection of the beer tax. With the liquor tax, the ABC Board — the State — is necessarily involved in the sale — it is the original legal seller of all the liquor in the state, whether the sale is to a retailer or to a consumer. Thus, unlike the beer tax and the other taxes the City cites, with the liquor tax there is no practical requirement that the statutes imposing that tax state expressly upon whom the incidence of the tax falls and whether the retailer is to serve as a collection agent for the State.
The City makes additional arguments that Guthrie is asking for a tax “deduction,” but these arguments are not very clear, and they are meritless.
We conclude that the City has not shown that S&L is due to be overruled. Considering that S&L to some extent relied on Judge Bradley’s special concurrence in B & B, we note that we do not necessarily accept all of Judge Bradley’s analysis of Ross Jewelers in his special concurrence in B & B.
Because we do not overrule S&L’s conclusion that the incidence of the liquor tax falls upon the ultimate consumer and because of the reasons explained before, we hold that Guthrie is entitled to subtract an amount equal to the amount it pays in state liquor taxes from the “gross receipts” computation of the City’s tax described earlier. We make no determination as to the propriety of the tax refund that Guthrie requests; indeed, the parties address the refund issue only minimally in this appeal. The judgment is due to be. reversed and the cause remanded, and the trial court is instructed to reconsider its ruling on the refund in light of this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.

. That interpretation would also allow Guthrie the option of either (1) reducing the price of the liquor by as much as $.56 for every $10.00 of liquor it sells (Guthrie would no longer have to pay an amount equal in the example to the 10% tax on the $5.60 and thus would no longer have the incentive to increase the price by that amount to subsidize, for the most part, the City’s tax) or (2) maintaining the price at the same level and keeping as profit that $.56 for every $10.00 of liquor it sells.