684 So.2d 1283 (1996)
CITY OF MOBILE
v.
M.A.D., INC., d/b/a Lumberyard Cafe.
1930116.
Supreme Court of Alabama.
June 28, 1996.
Rehearing Denied September 6, 1996.
Wanda J. Cochran, Asst. City Atty., and John R. Lockett, City Atty., Mobile, for Appellant.
W. Lewis Garrison, Jr. and Ezra B. Perry, Jr. of Corley, Moncus & Ward, P.C., Birmingham, for Appellee.
J. Kenneth Smith, League Counsel, Montgomery, for Amicus Curiae Alabama League of Municipalities, in support of appellant.
PER CURIAM.
The dispositive issue presented in this case is whether Alabama's 56% tax on liquor, see Ala.Code 1975, § 28-3-200 et seq., is a tax levied on liquor retailers or whether it is a tax levied on consumers. This is not the first time this issue has been presented to this Court. For a better understanding of this *1284 case, see Guthrie Enterprises, Inc. v. City of Decatur, 595 So.2d 1358 (Ala.1992), wherein this Court, acknowledging that it was making "a fairly close call," held that the liquor tax in question was a tax on consumers.
In Guthrie, the City of Decatur had levied a "license tax of ten (10) percent of the gross receipts of [the retailer's] business derived from the sale of all alcoholic beverages, except beer and table wine." 595 So.2d at 1358. The importance of distinguishing between a tax on the seller/retailer (which tax is not required to be passed on to the consumer) and a tax on the consumer was fully explained in Guthrie:
"Whether the incidence of the state liquor tax falls on the ultimate consumer of the liquor or on the retailer when he buys the liquor from the ABC [Alcoholic Beverage Control] Board store is the dispositive issue in this case. That issue is dispositive, because if the state liquor tax is a consumer tax, then the amount of the state liquor tax included in the sale price to the consumer is not a `gross receipt' of [the retailer]; that amount is simply the tax. If the incidence of the state liquor tax falls on the retailer, then the amount of the state liquor tax included in the sale price to the consumer is a gross receipt of the retailer, because the retailer is passing on the cost of the tax to the consumer in the form of a price increase, although the consumer is not necessarily the entity that the taxing statutes intended to bear that cost. Accordingly, [the retailer] contends that the incidence of the state liquor tax falls on the ultimate consumer, but the City contends that the incidence of the state liquor tax falls on ... the retailer."
595 So.2d at 1360. (Emphasis in Guthrie.) In reversing a summary judgment for the city, this Court in Guthrie, relying on S & L Beverages & Blends, Inc. v. Ritchie, 567 So.2d 341 (Ala.Civ.App.1990), concluded that the legislature must have intended for the state liquor tax to be a consumer tax. The basic rationale of Ritchie, and, thus, of this Court's holding in Guthrie, was that the liquor tax statutes should be construed so as to be in harmony with the statutes controlling the taxation of beer and table wine, which clearly provide that the taxes levied on those beverages are consumer taxes, with the person or entity paying the tax in the first instance acting as an agent for the state for the collection and payment of taxes. See Ala.Code 1975, §§ 28-3-184 ("malt or brewed beverages") and 28-3-190 ("beer"), and § 28-7-16 ("table wine"). This Court in Guthrie, quoting in part from Ritchie, also stated:
"`Statutes concerning the taxes on liquor were enacted by the legislature between 1943 and 1980, prior to the time that retailers were allowed to sell liquor to consumers for off-premises consumption, which was permitted in 1981 as a result of the supreme court's decision in Broadwater v. Blue & Gray Patio Club, 403 So.2d 209 (Ala.1981). These statutes provide that the ABC Board shall not absorb the tax, but shall pass it on to the purchaser. The County contends that the use of the term purchaser indicates that it is a tax on the retailer, S & L, which is part of the cost of doing business, and cannot be passed on to the consumer. See Ala.Code 1975, §§ 28-3-200 through -205.
"`This court, considering similar facts, recognized no distinction between beer and wine taxes and liquor taxes in the case of State Department of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ. App.1987), and found further that the intent of the legislature in the use of the term "purchaser" in the statute was for the liquor taxes, as it was for the beer and wine taxes, to be on the ultimate consumer, not the retail stores buying at wholesale for resale.[[1]] Any other interpretation *1285 would lead to double taxation, which "should be avoided whenever possible." Id. at 1115.
"`Further, concluding that the tax was an excise tax and not a privilege tax, Presiding Judge Bradley, concurring specially, said:
"`"Taxpayer contends that the liquor tax is an excise tax and, therefore, a consumer tax. If denominated a consumer tax, the liquor tax would be passed on to the ultimate consumer as are the excise taxes on beer and wine. Consequently, taxpayer would be allowed to deduct the liquor tax from gross proceeds for sales tax computation. The Department contends that the statute intended the tax to be on the purchaser and not the consumer. It is my conclusion that the ... tax is an excise tax, not a privilege tax as the Department contends."
"`Id. at 1117.
"`And, where the same case discusses the tax as a business expense, the majority said:
"`"The Department further argues that a rational basis for taxation distinction is created because package stores become the `purchasers' when they buy their liquor inventory from state stores. But in fact they are not the ultimate purchasers, and they should not be treated as such under a taxing arrangement that disallows their passing the liquor tax on to the real ultimate purchaser, the consumer, as a tax instead of a business expense."
"`Id. at 1116.
"`Consequently, we find in the instant case that the liquor taxes imposed by §§ 28-3-200 through -205 are consumer taxes and may properly be deducted from S & L's gross receipts for purposes of computation and payment of the county license tax and sales tax.'
"567 So.2d at 341-42. The only difference between the tax in S & L and the tax in this case is that the gross receipts tax in S & L was a county tax, not a tax imposed by a municipality. We find no significance in that distinction for the purposes of our analysis in this case.
"As the Court of Civil Appeals suggests in S & L, the holding in S & L was based in part on Presiding Judge Bradley's special concurrence in State Department of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ.App.1987). Judge Bradley wrote in that case:
"`"Package store" retail liquor establishments are a relatively new creature in Alabama, coming into existence after 1981 by virtue of judicial interpretation of sections 28-3A-1 through -26, Code 1975. See, Broadwater v. Blue & Gray Patio Club, 403 So.2d 209 (Ala.1981). The Department's regulations are silent as to how they should be taxed.
"`Taxpayer contends that the liquor tax is an excise tax and, therefore, a consumer tax. If denominated a consumer tax, the liquor tax would be passed on to the ultimate consumer as are the excise taxes on beer and wine. Consequently, taxpayer would be allowed to deduct the liquor tax from gross proceeds for sales tax computation. The Department contends that the statute intended the tax to be on the purchaser and not the consumer. It is my conclusion that the ... tax is an excise tax, not a privilege tax as the Department contends. The taxes levied on beer and wine are considered by the Department to be excise taxes. The Department cites to Ross Jewelers, Inc. v. State, 260 Ala. 682, 72 So.2d 402 (1953), in its regulations regarding beer and wine taxes. I see no distinction between these taxes and the liquor tax.
"`Ross involved a Federal excise tax commonly referred to as a "luxury tax." The court was faced with interpreting whether gross proceeds should include this tax for the computation of State sales tax. The State there contended *1286 the tax was merely a cost of doing business and that, as such, State sales tax could be computed on its inclusion in the gross proceeds. The court disagreed, stating:
"`"[T]he Federal Retail excise Tax is not imposed upon the retailer as a privilege tax for doing business, but is specifically imposed upon the article sold. It is to be included in the price to the purchaser or consumer and therefore collected from the purchaser or consumer and held by the retailer to be accounted for and remitted to the Federal Government. Under the circumstances it is a mistake to say that the Federal Retail Excise Tax is a part of the expense of sale made by the retailer, because in no way is he obligated to make such outlay and in no way is he responsible for the tax, except that he is a conduit through whom the tax passes from his purchaser to the Federal Government."
"`Ross, supra.
"`Ross can be distinguished from the instant case in that the sale of liquor involves a wholesale/retail relationship not found in Ross. I do not see that this difference presents any problem. The merchandise sold in Ross was not part of a highly regulated industry as are the sales of liquor. The State of Alabama requires the existence of the wholesale situation in retail liquor sales. The existence of the wholesale situation does not present a problem in sales of beer or wine.'
"534 So.2d at 1117."
595 So.2d at 1361-62.
Like the retailer in Guthrie, the retailer involved in this case challenged the license tax imposed by the city on the ground that the state liquor tax was a consumer tax. Unlike the City of Decatur in Guthrie, which levied its tax on the "gross receipts" of retailers, the City of Mobile in this case levied a license tax on "the purchase price paid by the retailer for all liquor purchases from all sources." Relying on the rationale of Guthrie, however, the retailer argued in the trial court, as it does now, that the 56% state liquor tax should not constitute a part of the value of its inventory for purposes of determining the amount of tax owed to the city. Following the rationale of Guthrie, the trial court agreed with the retailer, entered a summary judgment in its favor, and ordered a refund of the taxes allegedly overpaid. The city has appealed, arguing that the state liquor tax should be construed as falling on the retailer, not the consumer, and that Guthrie, and the case on which it primarily relied, Ritchie, were incorrectly decided and should be overruled. After carefully considering the record and the briefs of the parties, as well as the amicus curiae brief filed by the Alabama League of Municipalities, we agree.
The six statutes that together comprise Alabama's tax on liquor were initially enacted in 1943 (Ala.Acts 1943, No. 99, codified at § 28-3-200); 1955 (Ala.Acts 1955, 2d Ex. Session, No. 78, codified at § 28-3-201); 1959 (Ala.Acts 1959, No. 312, codified at § 28-3-202); 1969 (Ala.Acts 1969, No. 550, codified at § 28-3-203); 1979 (Ala.Acts 1979, No. 79-761, §§ 4-6, codified at § 28-3-204); and 1980 (Ala.Acts 1980, No. 80-478, codified at § 28-3-205), respectively. These statutes provide that the tax shall be collected by the Alcoholic Beverage Control Board from "the purchaser." By law, liquor retailers must purchase their liquor from the ABC Board. None of these statutes authorizes or requires "the purchaser" (the retailer) to pass the tax on to the consumer.
In 1979, during the same legislative session in which it enacted what is codified at § 28-3-204, imposing an additional three percent tax on liquor, the legislature also levied a tax on "any malt or brewed beverages." See Ala.Acts 1979, No. 79-802, § 1, codified at § 28-3-184. In doing so, the legislature specifically provided:
"Collection. The tax levied by subsection (a) of this section shall be collected by the Alabama alcoholic beverage control board and said tax shall be added to the sales price of all malt or brewed beverages sold, and shall be collected from the purchasers. It shall be unlawful for any person, firm, corporation, club or association who is required to pay the tax in the first instance to fail or refuse to add to the sales *1287 price and collect from the purchaser the required amount of tax, it being the intent and purpose of this provision that the tax levied is in fact a tax on the consumer, with the person, firm, corporation, club or association who pays the tax in the first instance acting merely as an agent of the state for the collection and payment of the tax."
In the 1980 legislative session, the same session in which it enacted what is codified at § 28-3-205, imposing an additional 10% tax on liquor, the legislature also levied a tax on "table wine." See Ala. Acts 1980, No. 80-382, § 16, codified at § 28-7-16. In doing so, the legislature again used specific language indicating its intention that that tax be on the consumer:
"Collection. The tax levied by subsection (a) of this section shall be added to the sales price of all table wine sold and shall be collected from the purchasers. The tax shall be collected in the first instance from the wholesaler where table wine is sold or handled by wholesale licensees, and by the board from [whoever] makes sales when table wine is sold by the board. It shall be unlawful for any person who is required to pay the tax in the first instance to fail or refuse to add to the sales price and collect from [the] purchaser the required amount of tax, it being the intent and purpose of this provision that the tax levied is in fact a levy on the consumer. The person who pays the tax in the first instance is acting as an agent of the state for the collection and payment of the tax and as such may not collect a tax on table wine for any other level of government."
Also during the 1980 legislative session the legislature passed Act No. 80-529, § 3, codified at § 28-3A-3, which provides in pertinent part:
"(a) Subject to the provisions of this chapter and regulations promulgated thereunder, the board is authorized and empowered to issue and renew licenses to reputable and responsible persons for the following purposes:
". . . .
"(8) To sell liquor ... at retail for off-premises consumption."
As this legislative history clearly indicates, the legislature knows how to make a tax a consumer tax. The legislature used unequivocal language in § 28-3-184, imposing a tax on "malt or brewed beverages" and in § 28-7-16, imposing a tax on "table wine," to express its intention that those taxes be passed on to the consumer. It is significant, we think, that when the legislature was using this specific language during the 1979 session (§ 28-3-184) and the 1980 session (§ 28-7-16), it chose not to incorporate it into either § 28-3-204 or § 28-3-205, which imposed additional taxes on liquor. This strongly suggests that the legislature intended to make a distinction for tax purposes between "malt or brewed beverages" and "table wine" on the one hand, and liquor on the other. Furthermore, as the opinion in Guthrie indicated, the Alabama Department of Revenue, the administrative agency charged with the general responsibility of supervising Alabama's tax laws, Ala.Code 1975, § 40-2-11, had, before the Guthrie and Ritchie decisions, interpreted the liquor tax statutes as imposing a tax on the retailer. Such an interpretation, although not controlling, was reasonable and, thus, was entitled to great weight and deference by this Court and by the Court of Civil Appeals. See Farmer v. Hypo Holdings, Inc., 675 So.2d 387 (Ala. 1996).
Finally, we are not persuaded that the following sentence in Guthrie is a correct basis for the holding in that case:
"No doubt, before Broadwater [v. Blue & Gray Patio Club, 403 So.2d 209 (Ala. 1981),] these liquor tax statutes placed the incidence of the tax upon the consumer; that is necessarily true, because then there was no retailer for the tax to be imposed upon."
595 So.2d at 1365. As previously noted, the legislature in 1980 authorized the licensing of persons for the retail sale of liquor for off-premises consumption. The legislature did so during the same legislative session in which it enacted § 28-3-205, imposing an additional tax on liquor. Also, as noted earlier, the legislature in 1980 did not incorporate into § 28-3-205 the specific language that it *1288 used in § 28-7-16, in which it imposed the consumer tax on table wine. Broadwater resolved a dispute between private club licensees (see § 28-3A-12) and private lounge licensees (see § 28-3A-11) as to whether the lounge licensees were entitled to sell liquor at retail for off-premises consumption; however, it was § 28-3A-3 that authorized the licensing of liquor retailers, not the decision in Broadwater.
Based on the foregoing, we conclude that Alabama's liquor tax is a tax on the retailer. As Justice Maddox noted in his dissenting opinion in Guthrie, the liquor tax was levied on the retailer as "a part of what it cost[s] the retailer to do business." 595 So.2d at 1367. The retailer may pass the tax along to the consumer in the form of a price increase; however, that is not statutorily required. We hold, therefore, that this case is controlled by Merchants Cigar & Candy Co. v. City of Birmingham, 245 Ala. 587, 18 So.2d 137 (1944), and the line of cases that follows that decision. To the extent that Guthrie is inconsistent with this opinion, it is hereby overruled.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, HOUSTON, and BUTTS, JJ., concur.
HOOPER, C.J., and KENNEDY, J., dissent.
KENNEDY, Justice (dissenting).
I am not persuaded that Guthrie Enterprises, Inc. v. City of Decatur, 595 So.2d 1358 (Ala.1992), released by this Court only four years ago and concurred in by a majority of the Court, was incorrectly decided. In my view, Guthrie, considered in its entirety, was correct. Also, in keeping with the limits imposed upon the Court by the doctrine of stare decisis, I would not overrule established precedent based on what amounts to the conclusion that the legislature may have intended an interpretation different from that given by the Court in Guthrie.
NOTES
[1] We note, for clarification, that B & B Beverage did not hold that the liquor tax was a consumer tax. Then Judge Ingram, writing for the majority, addressed only the issue whether retailers were denied equal protection of the law because they were required by law to collect from consumers a sales tax on the state liquor tax that the retailers were required to pay. State stores were not required to do so. Presiding Judge Bradley concurred in Judge Ingram's equal protection discussion; however, he wrote specially to state that, in his opinion, the state liquor tax was a consumer tax. Judge Holmes dissented from the majority opinion and stated the following with respect to Judge Bradley's special concurrence:

"In my opinion, Presiding Judge Bradley's comments regarding `statutory interpretation of the liquor tax statutes' are incorrect. Needless to say, I disagree with his comments and his conclusions."