WOODALL, Justice.
Efé Dangerfield, Lisa McKniqht, Carol Murphy, and Charles Crumbley, defendants in an action in the Montgomery Circuit Court, petition this Court for a writ of mandamus directing the Montgomery Circuit Court to grant their motion to dismiss the complaint or, in the alternative, to quash subpoenas issued in the case. We grant the petition in part and deny it in part.

I. Factual and Procedural Background

On August 6, 2009, a complaint was filed in the Montgomery Circuit Court by (1) Crown Motors, Inc. (“Crown”); (2) Forrest Frost, a director, shareholder, and officer of Crown; and individuals who were employees of Crown at the time of the events made the basis of this action, namely, (3) Marie Hatcher, (4) Donald Reuger, (5) Kevin Roden, and (6) Theresa Schoonover. Hatcher, Reuger, Roden, and Schoonover were “service advisor,” “service manager,” “body-shop manager,” and “office manager for the body shop,” respectively. Named as defendants in the complaint were certain officials of the Alabama Department of Revenue (“the Department”), namely, (1) Carol Murphy, (2) Special Agent Efé Dangerfield, (3) Sales, Use, and Business Tax Supervisor Lisa McKnight, and (4) Investigations Divisions Director Charles Crumbley. The complaint contained the following factual allegations:
Crown sells new and used automobiles at dealerships located in Gadsden, Anni-ston, and Fort Payne. The Gadsden dealership is owned and operated by Frost. For approximately two years immediately preceding the events made the basis of this action, Murphy, on behalf of the Department, had been auditing Crown’s sales-tax reports.
On the morning of May 14, 2009, Dangerfield obtained a warrant to search the premises of Crown’s Gadsden dealership. *678 At around noon on May 14, approximately 35 representatives of various governmental agencies, including the Department and the Federal Bureau of Investigation, converged on the premises of the Gadsden dealership. According to the complaint:
“The agents sealed off every entrance/exit way with law enforcement vehicles and roped off the areas with yellow tape. The agents, armed with firearms, stormed the two separate buildings located on the car lot. The agents announced their purpose and ‘corralled’ everyone into the front portion of the main building of the dealership. This included employees and customers present anywhere on the premises. Office personnel were segregated from everyone else. Females were not allowed to bring their purses with them. No one was permitted to use a cell phone or telephone. The agents refused to allow anyone to contact the owner Mr. Frost. Everyone was told that they could leave only after talking to an agent. Employees were not permitted to leave for lunch. Roden ordered pizza for the employees from a local restaurant. Roden was escorted outside by agents to the pizza delivery vehicle, where the pizza was searched by the agents before the pizza was permitted into the dealership ....
“17. The agents obtained everyone’s name and contact information. With the employees and dealership management still corralled in the front of the showroom, the interviews began. Each individual was questioned separately in a private office in the back of the building. Individuals who needed to use the restroom were escorted by an agent.
“18. After several hours and after the agents and officers had obtained the information they wanted, the detainees were informed that all employees except office personnel could leave; however, once they left they could not return. Still, before anyone was permitted to exit the lot, their motor vehicle was stopped by two state troopers who asked if there was any ‘illegal contraband or paperwork’ in the vehicle. Schoonover was forced to open personal correspondence for inspection by the state troopers before she was allowed to leave the premises.
“19. Although all of the employees and customers at the dealership that morning were in fact in custody and were held incommunicado and not free to leave, no one was informed of any constitutional right. Everyone believed that each had to answer the interrogator’s questions before they would be permitted to leave.
“20. During the time the ‘house arrest’ continued, customers were unable to get their cars repaired or serviced. With only one exception, customers were not even permitted access to their vehicles which were ready for pickup. During the time of the search and seizure, the entire daily business of Crown was shut down. In addition, the Department seized virtually every scrap of paper, every computer and every flash drive.
“21. The Department removed enough documents and filing cabinets to fill at least two Ryder [brand rental] trucks and several vans. Computers were placed into a Chevrolet Suburban [sport-utility vehicle].”
(Footnote omitted.) A few days later, the Department obtained and executed another search warrant at the Gadsden dealership. Pursuant to this warrant, all documents in the attic of the main building of the dealership were seized.
On June 8, 2009, Crown “attempted to file a Motion for Return of Property” with *679 the Department, seeking the return of the seized documents. However, the Department disallowed the filing, asserting that there was “no pending case” with which to associate it. When Crown attempted to file the motion in the district court and the circuit court of Etowah County, its attempts were met with the same response.
The complaint contained 11 counts. All the defendants were sued in both their individual and official capacities. Count 1 (alleging a violation of due-process rights) alleged that Dangerfield, McKnight, Murphy, and Crumbley “acted willfully, wantonly, maliciously, in bad faith, beyond their authority, under a mistaken interpretation of the law, and intentionally,” in order to deny the “plaintiffs their contractual and property rights without Due Process of law.” Compensatory damages were sought under count 1.
Count 2 (alleging unlawful search and seizure) was brought solely on behalf of Frost and Crown. It alleged that the defendants “acted willfully, wantonly, maliciously, in bad faith, beyond their authority, under a mistaken interpretation of the law, and for the purpose of interfering with, destroying and denying ... Frost’s and Crown’s rights” in conducting an unlawful search of the premises of the dealership. Relief sought in count 2 included compensatory damages, punitive damages, and “return of all property illegally seized.”
Count 3 alleged intentional interference with business and contractual relations and was brought solely on behalf of Crown. Under that count, Crown sought compensatory damages, punitive damages, and “return of all property illegally seized.”
Count 4 alleged conversion and was brought solely on behalf of Crown. It alleged that the defendants “acted willfully, wantonly, maliciously, in bad faith, beyond their authority, under a mistaken interpretation of the law and for the purpose of converting Crown’s property,” that is, “virtually every scrap of paper, every computer and every flash drive within its possession.” Relief sought under count 4 included compensatory damages, punitive damages, and “return of all property illegally converted.”
Count 5 (seeking return of chattels m specie) was brought on behalf of Crown and sought the recovery of Crown’s property.
Count 6 (class claims alleging unlawful detention) was brought on behalf of Hatch-er, Reuger, Roden, Schoonover, and “all others similarly situated.” It alleged that the defendants “acted willfully, wantonly, maliciously, in bad faith, beyond their authority, under a mistaken interpretation of the law, and for the purpose of falsely imprisoning Hatcher, Reuger, Roden and Schoonover and others similarly situated.” Relief sought under count 6 was compensatory damages and punitive damages. Count 7 contained a similar class claim alleging false arrest, and count 8 alleged conspiracy.
Count 9 sought a judgment declaring (1) that the search warrants under which the Department conducted the searches of the premises of the dealership were “null, void, and without any effect whatsoever and were issued without authority and in violation of the law”; (2) that the “defendants’ acts and omission” were in violation of the law; (3) that the defendants’ acts or omissions interfered with and denied Crown’s contractual/property rights and business relationships; and (4) that the defendants’ acts or omissions “constitutfed] the false imprisonment, detainment, and arrest of Hatcher, Reuger, Roden, and Schoonover and all others similarly situated.”
Count 10 sought to enjoin “the enforcement of any future search warrants,” as *680 well as all further actions in alleged violation of the plaintiffs’ rights in contract, property, and liberty.
Finally, count 11 (request for return of property) was on behalf of Crown only. It sought, pursuant to Rule 3.13, Ala. R.Crim. P., the return of all property that was removed from the Gadsden dealership. Rule 3.13 provides, in pertinent part:
“A person aggrieved by an unlawful search and seizure may move the court for the return of the property seized on the ground that he or she is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be restored. If a motion of return of property is made or comes on for hearing after an indictment or information is filed, it shall be treated also as a motion to suppress evidence.”
On August 20-21, 2009, the plaintiffs issued subpoenas directing the defendants to appear for depositions, and to bring with them:
“1. Any and all documents, notations, memorand[a], data entries, e-mails, reports, video recordings, audio recordings, interview notes, and all Alabama Department of Revenue policies, practices and procedures which were used during the past five years to conduct searches and seizures from individuals, and/or any type of business....
“2. Any and all documents, notations, memorand[a], data entries, e-mails, reports, text messages, photographs, video recordings, audio recordings, and interview notes, generally and specifically, for this case_
“3. A copy of any and all e-mails sent, or received by, any and all government employees who were part of the planning, conducting and/or implementation of the search and seizure operations which occurred during 2009 at Crown Motors, Inc., Gadsden, AL.”
On September 1, 2009, the defendants filed a motion to dismiss the complaint, pursuant to Rule 12(b)(1) and (2), Ala. R. Civ. P. The same day, the defendants filed a motion to quash the subpoenas. On October 15, 2009, the trial court denied both motions. On November 19, 2009, the defendants (hereinafter referred to as “the petitioners”) filed this petition seeking a writ of mandamus directing the Montgomery Circuit Court to dismiss the claims against them on various immunity grounds or, in the alternative, to grant their motion to quash the subpoenas.

II. Immunity

The denial of a motion to dismiss “ ‘grounded on a claim of immunity’ ” is properly renewable by mandamus. Ex parte Simpson, 36 So.3d 15, 22 (Ala.2009). “A writ of mandamus is a drastic and extraordinary writ that will issue to compel a summary judgment on immunity grounds only upon a showing of a" clear legal right in the petitioner to the immunity sought.” Id. at 22. “The burden of establishing a clear legal right to the relief sought rests with the petitioner.” Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala.2007).
The claims of the plaintiffs (hereinafter referred to as “the respondents”) are asserted against the petitioners in both their official and individual capacities. The petitioners rely on two types of immunity as grounds for dismissal, namely, (1) absolute State immunity and (2) State-agent immunity.
*681 A. Absolute State Immunity— Official-Capacity Claims
Discussion of State immunity necessarily begins with the principle “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” Ala. Const.1901, § 14. It is settled beyond cavil that State officials cannot be sued for damages in their official capacities. Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 132-33 (Ala.2002) (a suit for damages against State officials in their official capacities is, in essence, an action against the State itself and cannot proceed). On this basis, we can summarily grant the petition as to the dismissal of counts 1 through 8 to the extent those counts seek damages from the petitioners in their official capacities.
 However, certain actions against State officials are not regarded as actions against the State for purposes of § 14. Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). For example, “Conjunctive action may be maintained against a state official [in his official capacity], if the official is acting beyond the scope of his authority or acting illegally.” St. Clair County v. Town of Riverside, 272 Ala. 294, 296, 128 So.2d 333, 334 (1961). Also not regarded as prohibited actions are those “brought under the Declaratory Judgments Act [Ala.Code 1975, § 6-6-220 et seq.], seeking construction of a statute and how it should be applied in a given situation.” Aland v. Graham, 287 Ala. 226, 230, 250 So.2d 677, 679 (1971). We will address in turn counts 9 and 10, which seek, respectively, declaratory and injunc-tive relief.

1. Declaratory Relief

The petitioners contend that count 9 is, “for all purposes, merely an attempt by the [respondents] to circumvent the ... sovereign immunity afforded state officials acting in their representative capacities,” petition, at 20 (emphasis added), and, consequently, “fails to fall within the exception from § 14 afforded declaratory judgment actions.” Petition, at 19. We agree.
A party may not characterize “claims as falling within the purported ‘exception’ to § 14 [when] they are, in effect, in the nature of claims seeking damages.” Alabama Dep’t of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 844 (Ala.2008). There is nothing to be “declared” under count 9 that does not also form the bases of one or more of counts 1 through 8, all of which— except count 5 — seek damages. Thus, count 9 should have been dismissed.

2. Injunctive Relief

The essence of the request in count 10 is an injunction against “the enforcement of any future search warrants.” (Emphasis added.) The petitioners contend that “the Circuit Court of Montgomery County has no jurisdiction in a ... civil proceeding ... to enjoin the [Department] officials from the exercise of their duties falling within the criminal investigation of the enforcement of revenue laws.” Supplemental brief of petitioners in their official capacities, at 7. We agree.
Our constitution provides:
“Sec. 42. Legislative, executive and judicial departments established.
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
“Sec. 43. Separation of Powers.
*682 “In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
Ala. Const.1901, §§ 42-43 (emphasis added).
The Department is an agency of the executive branch “charged with the general responsibility of supervising [and enforcing] Alabama’s tax laws.” City of Mobile v. M.A.D., Inc., 684 So.2d 1283, 1287 (Ala.1996). See Ala.Code 1975, § 40-2-11(1). Its agents have authority “to serve and execute any and all search warrants obtained in accordance with law for [statutorily designated purposes].” Ala.Code 1975, § 32-8-8. See Ala.Code 1975, § 15-5-1 et seq. (relating generally to the issuance of search warrants).
The relief requested in count 10 seeks— in a factual vacuum — exemption from criminal investigation and prosecution in futuro. To countenance such a request would constitute a clear intrusion upon the authority of the executive branch in violation of § 43 of the constitution. Consequently, count 10 should have been dismissed. In short, all the claims that were set forth in this complaint against the petitioners in their official capacities should have been dismissed, except counts 3, 4, 5, and 11, to the extent those counts seek the return of property from the petitioners in their official capacities.
B. State-Agent Immunity — Individual-Capacity Claims
The legal claims against the petitioners in their individual capacities stand on better ground. In their individual capacities, State agents do not enjoy absolute immunity from suits seeking damages. Instead, the Department’s agents in their individual capacities “enjoy only qualified immunity from suit.” Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 133 (Ala.2002). “The law of qualified immunity was succinctly restated in Ex parte Cranman, 792 So.2d 392, 405-06 (Ala.2000), [and] adopted by a majority of this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000).” Burgoon, 835 So.2d at 133. Under the Ex parte Cranman, 792 So.2d 392 (Ala.2000), restatement, State agents are not entitled to immunity if they have “ ‘acted willfully, maliciously, fraudulently, in bad faith,’ Giambrone [v. Douglas ], 874 So.2d [1046], 1052 [ (Ala.2003) ], or ‘[were] not exercising [their] ... judgment in the manner set forth in the examples in Cranman.’ Ex parte Hudson, 866 So.2d [1115, 1118 (Ala.2003) ].” Howard v. City of Atmore, 887 So.2d 201, 205 (Ala.2003).
“ ‘[A] motion to dismiss is typically not the appropriate vehicle by which to assert ... State-agent immunity and ... normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery.’” Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 398 (Ala.2003) (emphasis added) (quoting Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 837 So.2d 808, 813-14 (Ala.2002)). This is so because the question whether a State agent was acting “willfully, maliciously, fraudulently, in bad faith,” or was not “exercising ... judgment in the manner set forth in the examples in Cranman,” Howard, 887 So.2d at 205, is generally fact specific. See Ex parte City of Tuskegee, 932 So.2d 895, 908 (Ala.2005); Ex parte Alabama Dep’t of Mental Health & Men *683 tal Retardation, supra. Also, in reviewing the grant or denial of a motion to dismiss, the question “ ‘is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief.’ ” Ex parte Alabama Dep’t of Youth Servs., 880 So.2d at 398 (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). Because there has yet been no discovery and, therefore, no development of facts central to the State-agent-immunity defense, the trial court did not err in denying the motion to dismiss the claims against the petitioners in their individual capacities.
The only caveat to this conclusion regards the claims in counts 3, 4, 5, and 11 for the return of property from the petitioners in their individual capacities. A request for such relief from State officials in their individual capacities is meaningless. “This is so, because State officials act for and represent the State only in their official capacities.” Ex parte Dickson, 46 So.3d 468, 474 (Ala.2010).

III. Discovery

Finally, the petitioners contend that the trial court erred in denying their motion to quash subpoenas, which seek, among other things, “[a]ny and all documents, notations, memorand[a], data entries, e-mails, reports, video recordings, audio recordings, [and] interview notes” prepared “generally and specifically for this case, as well as “all Alabama Department of Revenue policies, practices and procedures which were used during the past five years to conduct searches and seizures from individuals, and/or any type of business.” According to the petitioners, they have already disclosed to the respondents that the Department has no “policies, practices, and procedures ... separate and apart from those found in the Alabama Rules of Criminal Procedure.” Reply brief, at 12. However, the petitioners contend that such things as the documents, e-mails, recordings, and interview notes listed in the subpoenas are protected from disclosure by, among other things, the privilege afforded by Ala. Code 1975, § 12-21-3.1.
Section 12-21-3.1, which relates to the “subpoena of law enforcement officers and investigative reports,” provides, in pertinent part:
“(a) Neither law enforcement investigative reports nor the testimony of a law enforcement officer may be subject to a civil or administrative subpoena except as provided in subsection (c).
“(b) Law enforcement investigative reports and related investigative material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative -writings or recordings are privileged communications protected from disclosure.
“(c) Under no circumstance may a party to a civil ... proceeding discover material which is not authorized discoverable by a defendant in a criminal matter. Noncriminal parties may upon proper motion and order from a court of record: Secure photographs, documents and tangible evidence for examination and copying only by order of a court imposing such conditions and qualifications as may be necessary to protect a chain of custody of evidence; or protect the prosecutors’, law enforcement officers’, or investigators’ work product; or to prevent the loss or destruction of documents, objects, or evidence. Such discovery order may be issued by a court of record upon proof by substantial evidence that the moving party will suffer undue hardship and that the rec *684 ords, photographs or witnesses are unavailable from other reasonable sources.
“(d) Discovery orders prior to the disposition of the criminal matter under investigation are not favored and should be granted only upon showing that the party seeking discovery has substantial need of the materials and is unable, without undue hardship, to obtain the substantial equivalent by other means.”
(Emphasis added.)
The scope of discovery by a defendant in a criminal case is controlled by Rule 16.1, Ala. R.Crim. P., which provides, in pertinent part:
“(e) Information not discoverable. Except as provided in (a), (b), and (d), the discovery or inspection of reports, memoranda, witness lists, or other internal state/municipality documents made by the prosecutor or the prosecutor’s agents, or by law enforcement agents, in connection with the investigation or prosecution of the case, or of statements made by state/municipality witnesses or prospective state/municipality witnesses, is not authorized.”
(Emphasis added.) Subsections (a), (b), and (d) require the showing of “good cause” by the defendant as a prerequisite to discovery of certain specified materials. The respondents concede the applicability of § 12-21-8.1. Respondents’ brief, at 25.
A petition for a writ of mandamus is the “proper means of review to determine whether a trial court has [exceeded] its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders ... so as to prevent an abuse of the discovery process by either party.” Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala.1993). To be entitled to materials within the scope of § 12-21-3.1, a party must demonstrate “by substantial evidence, that [he] will suffer undue hardship arid that the records, photographs or witnesses are unavailable from other reasonable sources.” (Emphasis added.) See also Ex parte Sexton, 904 So.2d 1251, 1252 (Ala.2004) (§ 12-21-3.1 requires a “showing of undue hardship and unavailability”).
The respondents have made no allegation — much less a showing — of hardship as required by the statute, or of the “good cause” required by Rule 16.1 for the discovery of the documents, notations, memoranda, and interview notes accumulated by the Department during its investigation. Therefore, the tidal court exceeded its discretion in denying the petitioners’ motion to quash the subpoenas. That order is due to be vacated.

IV. Conclusion

In summary, the petition is granted to the extent it seeks dismissal of all requests for damages from the petitioners in their official capacities. The petition is also granted to the extent it seeks dismissal of counts 9 and 10 in them entirety. The petition is granted as to counts 3, 4, 5, and 11 to the extent they seek return of property from the petitioners in their individual capacities. The petition is granted to the extent that a vacatur of the order denying the motion to quash the subpoenas is required. In all other respects, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.