[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 72 
The State of Alabama levies excise taxes on wine under the Alabama Table Wine Act, § 28-7-1 et seq., Ala. Code 1975; it formerly levied excise taxes under the Alabama Native Farm Winery Act, § 28-6-1 et seq., Ala. Code 1975. The Alabama Alcoholic Beverage Control Board ("the Board") appeals from the judgment of the Montgomery Circuit Court holding that § 28-7-16, Ala. Code 1975, the Code section pursuant to which the excise tax is levied, violates the Commerce Clause and is therefore unconstitutional. We reverse and remand.
Historically, all wine sold in Alabama was taxed under the general taxation provisions in § 28-3-200 et seq., Ala. Code 1975. In 1979, the Legislature passed the Native Farm Winery Act, which levied an excise tax of $.05 per gallon on all native farm wine sold in Alabama or dispensed as free samples at a native farm winery.[1] § 28-6-4(b), Ala. Code 1975. The Native Farm Winery Act also exempted native farm wine from all other taxes, including those levied under § 28-3-200 et seq.[2] §28-6-4(b), Ala. Code 1975.
In 1980, the Legislature enacted the Alabama Table Wine Act. The Table Wine Act levied an excise tax of $.45 per liter on all table wine "sold to [a] wholesale licensee or [the Board], to be collected from the purchaser by the [Board] or by a licensed retailer." § 28-7-16, Ala. Code 1975.[3] The Table Wine Act stated that "the tax levied is in fact a levy on the consumer." §28-7-16(b), Ala. Code 1975. The Table Wine Act repealed all other taxes on wine, but it did not repeal the tax-exemption provision in the Native Farm Winery Act.[4] § 28-7-24, Ala. Code 1975. *Page 73 
In March 2001, Henri-Duval Winery, L.L.C. ("Duval"), sued the Board, alleging that § 28-7-16, Ala. Code 1975, imposed an unconstitutional excise tax on wine moving in interstate commerce in violation of the Commerce Clause. Duval argued that Alabama's table-wine tax scheme discriminated against wine produced outside Alabama because it exempted from the excise tax Alabama native farm wine.[5] Duval sought a declaration that § 28-7-16, Ala. Code 1975, was unconstitutional. Duval also sought injunctive relief, a refund of wrongfully collected taxes, and certification of a class composed of all producers, manufacturers, importers, and distributors of table wine to participate in any damages award. The Board filed a counterclaim stating that the excise-tax provisions of the Table Wine Act do not discriminate against foreign wine, and arguing that if the trial court found Alabama's excise-tax scheme for table wine unconstitutional, the trial court should uphold the excise tax in the Table Wine Act, §28-7-16, Ala. Code 1975, and instead find the tax exemption in the Native Farm Winery Act, § 28-6-1 et seq., Ala. Code 1975, unconstitutional.
Duval moved for a partial summary judgment on the issue whether § 28-7-16, Ala. Code 1975, violated the Commerce Clause and was therefore unconstitutional. The trial court granted Duval's motion and held that the excise tax in § 28-7-16, Ala. Code 1975, was discriminatory and unconstitutional; that the Native Farm Winery Act, § 28-6-1 et seq., Ala Code 1975, is not subject to the Commerce Clause because it regulates intrastate commerce; and that the Board lacked standing to contest the constitutionality of the Native Farm Winery Act. The trial court certified that summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and ordered that all taxes collected pending the appeal of its decision be placed in escrow. The Board now appeals.
 "`The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).'"
Gonzalez, LLC v. DiVincenti, 844 So.2d 1196, 1200-01 (Ala. 2002) (quoting Brewer v. Woodall, 608 So.2d 370, 372 (Ala. 1992)). "For purposes of ruling on a motion to *Page 74 
dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197,45 L.Ed.2d 343 (1975).
The Board argues on appeal (1) that it has standing to ask the trial court to determine the constitutionality of the Native Farm Winery Act; (2) that the trial court erred in declaring the excise-tax provision in the Table Wine Act unconstitutional; (3) that the trial court erred in holding that the Native Farm Winery Act was not governed by the Commerce Clause; and (4) that the trial court erred by ordering that any excise taxes collected under the Table Wine Act be held in escrow.
Duval takes no position in this appeal on the issue of standing. Duval argues that the trial court's rulings on the constitutional issues are correct and that the escrow order will be mooted by this Court's decision on the constitutional questions.
 Standing
The Board argues that the trial court erred when it found that the Board lacked standing to challenge the constitutionality of the Native Farm Winery Act under the Commerce Clause. Duval takes no position on that issue on appeal, but Duval argued to the trial court:
 "How have the Defendants in this case suffered an injury from the provisions of the Native Farm Wine Tax? It's simple; they have not. Hence they do not have standing to assail it and hence, there is no case or controversy. At the same time, [Duval] has not suffered an `injury directly arising' from the Native Farm Wine Tax, hence we have no standing to attack it and have not attacked it. We have standing to assail on the tax applied to our products. That is the Table Wine Tax. While it may be that we have been injured because of the existence of the Native Farm Wine Tax, and its exemptions of those wines from the Table Wine Tax, we have been injured by the tax imposed on us by the Table Wine Tax Act."
A party establishes standing to bring a challenge under the Commerce Clause when it demonstrates the existence of (1) an actual, concrete and particularized "injury in fact" — "an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife,504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party must also demonstrate that "he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth, 422 U.S. at 518, 95 S.Ct. 2197.
In Stiff v. Alabama Alcoholic Beverage Control Board,878 So.2d 1138, 1144 (Ala. 2003), this Court held that Stiff, a consumer of table wine, had standing to challenge the tax scheme established in the Table Wine Act and the Native Farm Winery Act because the Table Wine Act requires consumers to pay the taxes levied therein. See also City of Mobile v. M.A.D., Inc.,684 So.2d 1283 (Ala. 1996) (finding that the Legislature intended that consumers pay the tax on table wine); Bridenbaugh v.Freeman-Wilson, 227 F.3d 848, 850 (7th Cir. 2000) (finding that the consumers had standing under the Commerce Clause to challenge discriminatory state laws regulating the out-of-state purchase of alcohol because "every interstate sale has two parties, and entitlement to transact in alcoholic beverages across state lines is as much a constitutional right of consumers as it is of shippers"). *Page 75 
Duval does not have standing to bring this action to seek a refund, because, as it asserted to the trial court, the Table Wine Act requires that consumers pay an excise tax on Duval's product.[6] Cf. Lac Courte Oreilles Band of Lake SuperiorChippewa Indians v. I.R.S., 845 F.2d 139, 142 (7th Cir. 1988) (holding that "only the person legally liable for paying a given federal tax may bring a refund suit"); United States v.Williams, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) (noting that common-law action of assumpsit for money had and received provided a remedy for those who had paid taxes they did not owe); Cook Oil Co. v. United States, 919 F.Supp. 1556
(M.D.Ala. 1996) (finding that taxpayer who paid disputed taxes had standing to sue for a refund).[7] Duval has standing to seek a declaration that the excise-tax scheme for table wine violates the Commerce Clause because the Table Wine Act, operating together with the Native Farm Winery Act, may injure Duval's business by placing Duval's product at a competitive disadvantage.[8] See Johnson Bros. Wholesale Liquor Co.v. Comm'r of Revenue, (Nos. 4264 and 4332, Oct. 1, 1986) (Minn. Tax Ct. 1996) (unpublished) (finding that the proper method to determine the injury to winemakers was to measure the adverse impact of the tax-rate differential on the out-of-state winemakers' business). The Board has standing to bring its counterclaim seeking a declaration that the Native Farm Winery Act violates the Commerce Clause because Duval has questioned Alabama's entire excise-tax scheme for table wine and, therefore, has affected the State's interest in regulating the sale of alcohol in Alabama. See Beskind v. Easley, 325 F.3d 506, 518 (4th Cir. 2003) (finding that North Carolina had an interest in its Alcoholic Beverage Control laws and in deciding which of those laws the court would strike down as unconstitutional).[9] See also Hunt v. Chemical WasteMgmt., Inc., 584 So.2d 1367, 1390 (Ala. 1991) (rev'd on other grounds) (holding that because Chemical Waste Management sued the State, a justiciable controversy existed and the Governor had standing to file a counterclaim seeking a declaratory judgment);Simpson v. Van Ryzin, 289 Ala. 22, 265 So.2d 569 (1972) (holding that a justiciable *Page 76 
controversy exists when an officer of the State is uncertain as to what the law means and pursues a course of conduct that would injure the interests of others who contend that the State officer has no legal right to act). Duval's action threatens the State's regulatory scheme, and a ruling in the Board's favor on its counterclaim will protect the State's interest in maintaining its regulatory framework. We, therefore, reverse the trial court's judgment insofar as it held that the Board lacks standing to bring its counterclaim.
 Constitutionality of the Excise-Tax Scheme
The Board argues that Alabama's taxation of table wine is permitted by the Twenty-First Amendment and does not violate the Commerce Clause because, it argues, the wine produced by native farm wineries does not compete with foreign wine. In BacchusImports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049,82 L.Ed.2d 200 (1984), the United States Supreme Court considered issues virtually identical to those presented in this case. InBacchus, the State of Hawaii imposed an excise tax on liquor but exempted locally produced liquor from taxation. Bacchus sued Hawaii, alleging that the discriminatory tax violated the Commerce Clause. Hawaii argued that the Twenty-First Amendment saved its tax scheme from the Commerce Clause challenge and that its locally produced liquors-okolehao and pineapple wine — did not compete with imported liquor subject to the excise tax.[10]
The Supreme Court held that the Twenty-First Amendment "did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause." 468 U.S. at 275, 104 S.Ct. 3049. The Supreme Court stated that whatever may have been the purpose of Section 2 of the Twenty-First Amendment, "[t]he central purpose of the provision was not to empower States to favor local liquor industries by erecting barriers to competition."468 U.S. at 276, 104 S.Ct. 3049.[11]
The Supreme Court also rejected Hawaii's argument that the locally produced liquor did not compete with the imported liquor:
 "However, neither the small volume of sales of exempted liquor nor the fact that the exempted liquors do not constitute a present `competitive threat' to other liquors is dispositive of the question whether competition exists between the locally produced beverages and foreign beverages; instead, they go only to the extent of such competition. It is well settled that `[w]e need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.'"
468 U.S. at 269, 104 S.Ct. 3049 (footnote omitted) (quotingMaryland v. Louisiana, 451 U.S. 725, 760, 101 S.Ct. 2114,68 L.Ed.2d 576 (1981)). The Supreme Court then held that "Hawaii['s] liquor tax exemption for okolehao and pineapple wine *Page 77 
violated the Commerce Clause because it had the purpose and effect of discriminating in favor of local products."468 U.S. at 273, 104 S.Ct. 3049 (footnote omitted).
Although we agree with the Board that the State has an interest, protected by the Twenty-First Amendment, in regulating the sale and consumption of table wine, and although we agree that the facts in this case demonstrate that native farm wine constitutes only a small fraction of wine sold in Alabama,[12] applying the rationale of the Supreme Court inBacchus, we conclude that neither of those arguments is sufficient to overcome the defect in Alabama's tax scheme that results in a Commerce Clause violation. In the present case, §28-7-16, Ala. Code 1975, requires consumers of table wine to pay an excise tax on table wine, while § 28-6-4(b), Ala. Code 1975, exempts native farm wine from that consumer excise tax.[13]
Therefore, as in Bacchus, the tax scheme at issue in this case violates the Commerce Clause by discriminating against foreign wine.
This conclusion, however, does not end our analysis. In this case, the trial court found only the excise tax in the Table Wine Act, specifically § 28-7-16, Ala. Code 1975, unconstitutional under the Commerce Clause; the trial court found that it could not consider the tax exemption in the Native Farm Winery Act, §28-6-4(b), Ala. Code 1975, because the Native Farm Winery Act dealt only with intrastate commerce. The Board argues that the trial court should have considered the entire statutory scheme for taxing table wine as a whole. The Board argues that §28-7-16, Ala. Code 1975, levies a nondiscriminatory excise tax on all table wine and that Alabama's statutory scheme for taxing table wine discriminates against foreign wine only by virtue of the tax exemption for native farm wine created in § 28-6-4(b), Ala. Code 1975. We agree that by providing a tax exemption for native farm wine, Alabama's statutory scheme for taxing table wine discriminates against foreign wine; § 28-6-4(b), Ala. Code 1975, and the last clause of § 28-7-24, Ala. Code 1975, effect a tax scheme that discriminates against foreign wine.
Section 28-7-16, Ala. Code 1975, levies a nondiscriminatory excise tax on all table wine, and "[n]ondiscriminatory measures, like the evenhanded tax at issue here, are generally upheld, in spite of any adverse effects on interstate commerce, in part because `[t]he existence of major in-state interests adversely affected . . . is a powerful safeguard against legislative abuse.'" West Lynn Creamery, Inc. v. *Page 78 Healy, 512 U.S. 186, 200, 114 S.Ct. 2205, 129 L.Ed.2d 157
(1994) (quoting Minnesota v. Clover Leaf Creamery Co.,449 U.S. 456, 473 n. 17, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)). We also recognize, however, that the nondiscriminatory tax, when coupled with the discriminatory exemption, violates the Commerce Clause.
In West Lynn Creamery, the Supreme Court of the United States considered the constitutionality of a dairy-pricing order issued by the commissioner of the Massachusetts Department of Food and Agriculture that imposed a "premium payment" on all milk dealers who sold milk to retailers in Massachusetts and that distributed the proceeds from the premium payments to all milk producers in Massachusetts. Massachusetts argued that its dairy premium payment was levied in a nondiscriminatory fashion on all in-state and out-of-state dealers. Massachusetts also argued that the subsidy provision in the order was a legal intrastate subsidy. The Supreme Court found that the Massachusetts order "is most similar to the law at issue in Bacchus." 512 U.S. at 196,114 S.Ct. 2205. The Supreme Court stated that "[o]ur Commerce Clause jurisprudence is not so rigid as to be controlled by the form by which a State erects barriers to commerce." 512 U.S. at 201,114 S.Ct. 2205. The Supreme Court held that "[t]he choice of constitutional means — nondiscriminatory tax and local subsidy — cannot guarantee the constitutionality of the program as a whole." 512 U.S. at 201, 114 S.Ct. 2205.
The trial court in this case erred because it allowed its analysis to be controlled by the form of the table-wine tax scheme. Applying the Supreme Court's rationale in Bacchus andWest Lynn Creamery, we hold that the nondiscriminatory excise tax in § 28-7-16, Ala. Code 1975, considered alone, does not violate the Commerce Clause, but that Alabama's table-wine tax scheme, considered as a whole, does violate the Commerce Clause.[14]
We agree with the Board that the trial court erred by striking the nondiscriminatory excise tax in the Table Wine Act and leaving intact the discriminatory language of the Native Farm Winery Act.[15] We note that in Bacchus, the Supreme Court did not hold that Hawaii's excise tax was unconstitutional; instead, the Supreme Court *Page 79 
held that Hawaii's scheme for taxing liquor — the excise tax coupled with the exemption — violated the Commerce Clause, and it remanded the case for the Hawaii court to consider whether to strike the nondiscriminatory excise tax or to strike the exemption from the excise tax. 468 U.S. at 277,104 S.Ct. 3049.[16]
Similarly in Beskind, the United States Court of Appeals for the Fourth Circuit deferred to the State to determine the appropriate remedy for a discriminatory regulatory scheme. InBeskind, out-of-state wineries challenged, under the Commerce Clause, North Carolina's prohibition on the direct sale of wine to North Carolina residents by out-of-state wineries. The trial court in Beskind agreed with the out-of-state wineries that North Carolina's laws prohibiting direct wine sales by out-of-state wineries violated the Commerce Clause because North Carolina permitted in-state wineries to sell wine directly to consumers. At the request of the out-of-state wineries, the trial court enjoined North Carolina from enforcing its laws prohibiting direct sales of wine to North Carolina residents by out-of-state wineries. North Carolina argued on appeal that the trial court's remedy was inappropriate and that it should be permitted to cure the discrimination against out-of-state wineries by prohibiting in-state wineries from selling wine directly to consumers. The United States Court of Appeals for the Fourth Circuit agreed with North Carolina and held: "North Carolina retains great flexibility to determine what sort of relief to provide to cure the discriminatory treatment, and thus we follow North Carolina's indication of its preference." 325 F.3d at 520. Although inBeskind the United States Court of Appeals for the Fourth Circuit affirmed the trial court's judgment finding that North Carolina's regulatory scheme discriminated against out-of-state wineries, the Court of Appeals vacated the trial court's order enjoining North Carolina from enforcing its prohibition on direct sales by out-of-state wineries to North Carolina residents because the court determined that North Carolina's proposed remedy was sufficient to cure the discriminatory effect of its Alcoholic Beverage Control laws.
Finally, in McKesson Corp. v. Division of Alcoholic Beverages Tobacco, Department of Business Regulation of Florida,496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court considered what would constitute an appropriate cure for a liquor tax that discriminated against out-of-state liquor producers. In McKesson, the Florida Supreme Court held that Florida's liquor-tax scheme, which discriminated against out-of-state products, violated the Commerce Clause, but it did not award refunds of illegal taxes. McKesson appealed, seeking a refund of illegal taxes. The United States Supreme Court held:
 "[A] State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination. Florida may reformulate and enforce the Liquor Tax during the contested tax period in any way that treats petitioner and its competitors in a manner consistent with the dictates of the Commerce Clause. Having done so, the State may retain the tax appropriately levied upon petitioner pursuant to this reformulated scheme because this retention would deprive petitioner of its property pursuant to a tax scheme that is valid under the Commerce Clause. . . . *Page 80 
 "More specifically, the State may cure the invalidity of the Liquor Tax by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reduction that its competitors actually received. . . . Alternatively, to the extent consistent with other constitutional restrictions, the State may assess and collect back taxes from petitioner's competitors who benefited from the rate reductions during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme. . . ."
496 U.S. at 39-40, 110 S.Ct. 2238. Thus, McKesson teaches that a state may cure the constitutional defect in its tax scheme by ending the discriminatory tax exemption for an in-state product and taking appropriate remedial actions instead of by striking the nondiscriminatory tax on all affected products.
In this case, just as in Beskind and McKesson, the Board retains an interest in preserving the integrity of the State's regulatory scheme for alcoholic beverages, and the trial court should defer to the Board's selection of a remedy so long as the Board's proposed remedy cures the Commerce Clause violation.[17] Therefore, we reverse the trial court's order striking § 28-7-16, Ala. Code 1975.[18]
 Conclusion
We hold that because Duval challenged the constitutionality of Alabama's table-wine excise tax, and because the State has an interest in preserving the integrity of its regulatory framework for the sale and taxation of wine, the Board has standing to bring a counterclaim challenging the constitutionality of the tax exemption for native farm wine enacted in the Native Farm Winery Act. We reverse the trial court's finding that § 28-7-16, Ala. Code 1975, is unconstitutional because we find that §28-7-16, Ala. Code 1975, standing alone, merely enacts a nondiscriminatory excise tax on table wine. We hold that Alabama's scheme of taxation for table wine embodied in the Table Wine Act read together with the Native Farm Winery Act violates the Commerce Clause. We further hold that it would have been proper for the trial court to cure the constitutional defect in the tax scheme by striking the tax-exemption provision in §28-6-4, Ala. Code 1975, and the last clause of § 28-7-24, Ala. Code 1975 (which provides that "nothing herein contained shall be construed to repeal or as repealing Chapter 6 of this title"). We remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The act defined a "native farm winery" as a winery where the annual wine production did not exceed 100,000 gallons and where at least 75% of the berries, fruit, produce, or honey used to make the wine was grown or produced in Alabama by the winery. § 28-6-1(1), Ala. Code 1975. It defined "native farm wine" as wine produced on a native farm winery. § 28-6-1(2), Ala. Code 1975. The act stated: "The excise tax provided for in this section shall be in lieu of all other taxes imposed." § 28-6-4(b), Ala. Code 1975. The Native Farm Winery Act was repealed effective September 30, 2001. Act No. 2001-1114, Ala. Acts 2001 (4th Spec.Sess.).
[2] The Native Farm Winery Act provided, in pertinent part: "The excise tax provided for in this section shall be in lieu of all other taxes imposed." § 28-6-4(b), Ala. Code 1975.
[3] The excise-tax provision of the Table Wine Act, § 28-7-16, Ala. Code 1975, was repealed by Act No. 2001-1114, Ala. Acts 2001, and it was replaced with a new § 28-7-16. The new § 28-7-16
likewise imposes an excise tax of $.45 per liter on all table wine.
[4] Section 28-7-24 reads:
 "All laws or parts of laws which conflict or are inconsistent with this chapter are hereby repealed. The taxes imposed by Sections 28-3-200, 28-3-201, 28-3-202, 28-3-203 and 28-3-204 do not apply to the sale of table wine; provided, that, nothing herein contained shall be construed to relieve any person from any tax liability, penalty or forfeiture incurred thereunder or under any local tax, county or municipal, hereby repealed, nor be construed to repeal any provision of law respecting the enforcement of any such tax liability, penalty or forfeiture incurred; provided further, that nothing herein contained shall be construed to repeal or as repealing Chapter 6 of this title [the Native Farm Winery Act]."
[5] The Board noted in its brief that in 2000 Alabama native farm wineries produced about 6,000 gallons (approximately 22,712 liters) of native farm wine. Assuming that all of that wine was sold in Alabama, the essence of Duval's complaint is that because of the excise-tax exemption for native farm wine, Alabama consumers, on whom the table-wine tax falls, underpaid excise tax on their purchase of native farm wine in the amount of approximately $10,219.50, and that that undertaxation put Duval at a competitive disadvantage.
[6]
 "`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.' National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). `"[L]ack of standing [is] a jurisdictional defect."' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 7 (Fed.Cl. 1997)). `[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.' Nunn v. Baker, 518 So.2d 711, 712
(Ala. 1987).''
Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala. 2003). Therefore, it is proper for us to consider whether Duval has standing to bring this action.
[7] Alabama has no statutory provision under which a consumer may seek a refund of an excise tax on table wine paid by a mistake of law or fact. Section 28-3-54 provides only that a licensee of the Board may apply for a refund of any excess tax or tax erroneously paid.
[8] We do not reach the questions whether Duval, in fact, has been placed at a competitive disadvantage or has been injured by such a disadvantage.
[9] The court noted in Beskind that the Twenty-First Amendment protects "States' interests in `promoting temperance, ensuring orderly market conditions, and raising revenue,' all in connection with the manufacture, shipment, and use of alcoholic beverages." 325 F.3d at 513 (quoting North Dakota v. UnitedStates, 495 U.S. 423, 432, 110 S.Ct. 1986, 109 L.Ed.2d 420
(1990) (plurality opinion)).
[10] Section 2 of the Twenty-First Amendment provides: "The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
[11] Justice Stevens dissented in Bacchus; he argued that because the Twenty-First Amendment permits a state to regulate the importation of liquor into the state, a state may impose a discriminatory tax on imported liquor. See 468 U.S. at 279,104 S.Ct. 3049 (Stevens, J., dissenting). The Board urges this Court to adopt the position advocated by Justice Stevens in hisBacchus dissent. We decline that invitation.
[12] The Board noted that there are only 8 active native farm wineries in Alabama and that their combined production in 2000 totaled approximately 6,000 gallons of wine. The Board also noted that Alabama's Alcoholic Beverage Control stores no longer carry native farm wine because of sluggish sales.
[13] Section 28-6-4(b), Ala. Code 1975, imposes an excise tax on native farm wine, but that tax falls on winemakers, not consumers. Section 28-6-4(b), Ala. Code 1975, reads, in pertinent part: "There is hereby levied and assessed an excise tax upon each case of native farm wine sold by a manufacturer to any source to be collected from the manufacturer in an amount equal to $.05 per gallon." In M.A.D. this Court considered similar statutory language when it addressed the incidence of excise taxes imposed on "the purchaser" of liquor in §§ 28-3-201 through 205, Ala. Code 1975. This Court held that because liquor retailers "purchase" liquor from the Board, and because the tax statutes do not require the retailers to pass the liquor taxes on to consumers, the taxes at issue were not taxes on liquor consumers. 684 So.2d at 1288. Therefore, because nothing in § 28-6-4(b), Ala. Code 1975, requires the manufacturers of native farm wine to pass the excise tax on native farm wine on to consumers, §28-6-4(b) levies a tax on the winemaker, not the consumer.
[14] Justice Scalia, in a concurring opinion in West LynnCreamery, explains that one of the "possible devices" a state may use to discriminate against out-of-state industries is "a tax upon the industry that is nondiscriminatory in its assessment, but that has an `exemption' or `credit' for in-state members."512 U.S. at 210, 114 S.Ct. 2205 (Scalia, J., concurring in the judgment). Justice Scalia notes that the exemption or credit from a neutral tax has been held to be unconstitutional.512 U.S. at 211, 114 S.Ct. 2205 (Scalia, J., concurring in the judgment).
In Bacchus, the exemption from Hawaii's excise tax for in-state products was part of the excise-tax statute. See In reBacchus Imports, Ltd., 65 Haw. 566, 569 n. 1, 656 P.2d 724, 726
n. 1 (1982). It is immaterial to our analysis that Alabama places the table-wine tax and the exemption from the table-wine tax in different sections of the Code.
[15] Duval argues that the "repealer clause" in § 28-7-24, Ala. Code 1975, renders the table-wine tax unconstitutional because it fails to repeal the excise-tax exemption in the Native Farm Winery Act. Section 28-7-24, Ala. Code 1975, reads, in pertinent part: "[N]othing herein contained shall be construed to repeal or as repealing Chapter 6 of this title." The fact that the Table Wine Act failed to repeal a pre-existing discriminatory tax provision in the Native Farm Winery Act does not, standing alone, render the Table Wine Act unconstitutional. Further, if the "repealer clause" is the source of the constitutional violation, the trial court could have struck merely that clause from § 28-7-24, Ala. Code 1975, and cured the constitutional defect in the Table Wine Act.
[16] The Supreme Court observed that the federal constitutional issues involved likely were intertwined with state-law issues and that such questions should appropriately be addressed by the state court. 468 U.S. at 277, 104 S.Ct. 3049.
[17] Duval argued that the Board failed to plead its constitutional counterclaim with sufficient specificity. We agree with the Board that Duval knew that the Native Farm Winery Act was at issue in the Board's counterclaim.
[18] We do not decide whether the trial court erred by ordering the Board to escrow the taxes collected under § 28-7-16, Ala. Code 1975, pending resolution of this appeal. Duval argued that the escrow issue will have been mooted by this Court's ruling on the constitutionality of the table-wine tax, and in its reply brief the Board agreed. *Page 81