Lateefah Muhammad and Leon E. Frazier appeal from a judgment dismissing their action against Johnny Ford, in his capacity as a member of the Alabama House of Representatives, and David Warren, sheriff of Macon County.[1] We affirm. *Page 1160 
 I. Background
During the 2003 regular session of the Alabama Legislature, then Representative Ford sponsored House Bill 660, which proposed an amendment to the Alabama Constitution of 1901 that would provide for the legal operation of bingo games for eleemosynary purposes in Macon County and would grant the Macon County sheriff the authority to promulgate rules and regulations governing the operation of such bingo games in Macon County. House Bill 660 also provided for a referendum on the proposed constitutional amendment pursuant to Amendment No. 555, Ala. Const. 1901 (now § 284.01, Ala. Const. 1901 (Off.Recomp.)). The legislature enacted House Bill 660, which became Act No. 2003-124, Ala. Acts 2003. On November 4, 2003, voters approved the constitutional amendment proposed by Act No. 2003-124 in a referendum, and it became Amendment No. 744
to the Alabama Constitution of 1901 (now Local Amendments, Macon County § 1 (Off.Recomp.)). Amendment No. 744, Ala. Const. 1901, provides:
 "The operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes shall be legal in Macon County. The sheriff shall promulgate rules and regulations for the licensing and operation of bingo games within the county. The sheriff shall insure compliance pursuant to any rule or regulation and the following requirements:
 "(1) No person under the age of 19 years shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 years be permitted to conduct or assist in the operation of any game of bingo.
 "(2) No bingo license shall be issued to any nonprofit organization, unless the organization shall have been in existence for at least three years in the county immediately prior to the issuance of the permit or license.
 "(3) Bingo games may be operated on the premises owned or leased by the nonprofit organization operating the bingo game.
 "(4) A nonprofit organization may enter into a contract with any individual, firm, association, or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization. A non-profit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.
 "(5) A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game.
 "(6) Prizes given by any nonprofit organization for the playing of bingo games shall not exceed the cash amount or gifts of equivalent value set by rule or regulation during any bingo session during any calendar week."
On March 26, 2004, Muhammad and Frazier initiated this declaratory-judgment action in the Macon Circuit Court pursuant to § 6-6-220 et seq., Ala. Code 1975, seeking to have Act No. 2003-124 declared unconstitutional as violative of the separation-of-powers provision contained in § 43, Ala. Const. 1901.[2] On April 29, 2004, Ford and Warren filed a motion to dismiss the *Page 1161 
action.[3] Their motion was premised on the arguments that the trial court lacked jurisdiction, that Muhammad and Frazier lacked standing, and that Muhammad and Frazier failed to state a claim upon which relief could be granted. Muhammad and Frazier amended their complaint on May 24, 2004, to name Alabama Attorney General Troy King as a defendant. Attorney General King filed an acceptance and waiver of further service with the trial court on July 2, 2004.
Muhammad and Frazier again amended their complaint on November 21, 2005. In the second amended complaint, they alleged "that House Bill 660, ratified as Amendment 744 to the Alabama Constitution, violates the separation of powers doctrine under the Alabama Constitution, the due process of the laws under both the United States and Alabama Constitutions, and the equal protection clause under both the United States and Alabama Constitutions." On the same day Muhammad and Frazier filed a written response to Ford and Warren's motion to dismiss.
On November 22, 2005, the trial court held a hearing on the motion to dismiss, and by order of December 13, 2005, the trial court dismissed Muhammad and Frazier's complaint without stating any reason for its decision. Muhammad and Frazier appeal.
 II. Standard of Review "A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). We must also view the allegations of the complaint most strongly in the pleader's favor to determine whether it appears the pleader could prove any set of circumstances that would entitle the pleader relief. Nance, 622 So.2d at 299. Furthermore, we will not consider whether the pleader will ultimately prevail on the complaint but whether the pleader may possibly prevail. Id.
 "For a declaratory-judgment action to withstand a motion to dismiss there must be a bona fide justiciable controversy that should be settled. Anonymous v. Anonymous, 472 So.2d 640, 641
(Ala.Civ.App. 1984); Smith v. Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 309 So.2d 424, 427 (1975). The test for the sufficiency of a complaint seeking a declaratory judgment is whether the pleader is entitled to a declaration of rights at all, not whether the pleader will prevail in the declaratory-judgment action. Anonymous, 472 So.2d at 641.
 "The lack of a justiciable controversy may be raised by either a motion to dismiss or a motion for a summary judgment. Smith, [293 Ala. at 649,] 309 So.2d at 427. See also Rule 12, Ala. R. Civ. P.; Rule 56, Ala. R. Civ. P. However, a motion to dismiss is rarely appropriate in a declaratory-judgment action. Wallace v. Burleson, 361 So.2d 554, 555 (Ala. 1978). If there is a justiciable controversy at the commencement of the declaratory-judgment action, the motion to dismiss should be overruled and a declaration of rights made only after an answer has been submitted and evidence has been presented. Anonymous, 472 So.2d at 641. However, if there is not a justiciable controversy, a motion to dismiss *Page 1162 
for failure to state a claim should be granted. Curjel v. Ash, 263 Ala. 585, 83 So.2d 293, 296 (1955)."
Harper v. Brown, Stagner, Richardson, Inc.,873 So.2d 220, 223 (Ala. 2003).
 III. Analysis
Before considering the merits of this appeal, this Court must first consider whether Muhammad and Frazier have standing to challenge the constitutionality of Amendment No. 744. Muhammad and Frazier contend that "they do have standing to bring this cause forward because a justiciable controversy exists." (Muhammad and Frazier's brief, p. 14.) However, our analysis is not as simple as whether a justiciable controversy exists. As this Court has previously observed:
 "`To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996). `Standing . . . turns on "whether the party has been injured in fact and whether the injury is to a legally protected right."' [State v. Property at] 2018 Rainbow Drive, 740 So.2d [1025,] 1027 [(Ala. 1999)] (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting)) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala. 2003) (`The power of the judiciary . . . is "the power to declare finally the rights of the parties, in a particular case or controversy. . . ."' (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala. 1998))); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (`[T]he law of Art. Ill standing is built on a single basic idea — the idea of separation of powers.')."
Town of Cedar Bluff v. Citizens Caring for Children,904 So.2d 1253, 1256 (Ala. 2004). In Alabama AlcoholicBeverage Control Board v. Henri-Duval Winery, L.L.C.,890 So.2d 70 (Ala. 2003), this Court adopted a more precise rule regarding standing articulated by the United States Supreme Court:
 "A party establishes standing to bring a [constitutional] challenge . . . when it demonstrates the existence of (1) an actual, concrete and particularized `injury in fact' — `an invasion of a legally protected interest'; (2) a `causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be `redressed by a favorable decision.' Lujan v. Defenders of Wild-life, 504 U.S. 555, 560-61,112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party must also demonstrate that `he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.' Warth [v. Seldin], 422 U.S. [490,] 518, 95 S.Ct. 2197 [(1975)]."
890 So.2d at 74.
Muhammad and Frazier argue that they have standing because, they say, a justiciable controversy exists as to whether Amendment No. 744 delegates to a member of the executive branch of the government legislative powers in violation of *Page 1163 
§ 43, Ala. Const. 1901.[4] They further argue that they have standing because, they say, Amendment No. 744 "creates a monopoly in the electronic bingo gaming operations in Macon County, and as such, not only violates their right to due process and equal protection under the laws of both the United States Constitution and the Alabama Constitution, but denies them the opportunity to benefit from the law in its effect." (Muhammad and Frazier's brief, p. 5.) Frazier also argues that being subject to Amendment No. 744 has caused him to "feel psychologically devastated." In an affidavit submitted in support of Muhammad and Frazier's response to Ford and Warren's motion to dismiss, Frazier stated:
 "I had no legislative input in introducing House Bill 660 that is now Amendment 744. I only had one vote on it as a citizen of Macon County. I have no way to enjoy the intended proceeds, or redress by way of a meaningful grievance procedure other than through this court system.
 "I believe Amendment 744 was bad law when it was introduced as House Bill 660. I believe it is still bad law as a constitutional amendment. I believe it places me in a similar situation in which many of my ancestors were during slavery when laws permitted slavery, arrests, incarcerations, unconstitutional prohibitions against my forebears, and in some situations, even death. My ancestors had no say in the legislative process of those laws, or roles in the administration of them, nor did they have any meaningful method for redress when the laws negatively impacted them, their businesses and organizations, and families. History reveals that many of them were psychologically devastated, and in some cases, physically destroyed.
 "I feel psychologically devastated as I am subjected to Amendment 744. I have experienced restless nights, upset stomach, nervous tension and feelings of inferiority when I sense that such a law as Amendment 744 permits what the Alabama Constitution forbids. These feelings are similar to those that I experienced earlier in my life in Sumter County, Alabama, when `Jim Crow' laws were used by whites to deny my family, friends, and me the rights that were supposed to be guaranteed by the United States Constitution and the Alabama Constitution."
Ford and Warren assert that Muhammad and Frazier do not have standing because, they say, there is no live dispute; Amendment No. 744 had already been ratified and was included as part of the Alabama Constitution before Muhammad and Frazier initiated this action. Ford and Warren also argue that Muhammad and Frazier failed to establish some particularized injury or damage to a recognized legal right or interest and that Muhammad and Frazier have failed to show that an adverse legal interest existed between them and Ford in that Ford had no personal stake in defending Amendment No. 744. Finally, Ford and Warren argue that Muhammad and Frazier lack standing because they cannot show that a redressable injury exists. *Page 1164 
In Town of Cedar Bluff, supra, this Court held that, without a showing of actual injury, a qualified elector does not have standing to challenge the question to be voted upon in an election. The appellees in Town of Cedar Bluff
argued that § 17" 15-1, Ala. Code 1975, which provides for a contest by a qualified elector of an election for public office, should be extended to electors challenging the constitutionality of referendums regarding the enactment of local-option laws. In regard to the appellees' argument concerning § 17-15-1, Ala. Code 1975, this Court held:
 "This statute gives a qualified elector . . . the right to challenge neither the August 12, 2003, local-option election itself nor the question voted upon in that election. Rather, § 17-15-1 confers standing upon an elector to challenge only certain specified elections to fill the state and county offices listed therein, not referendums of local-option elections. Moreover, it grants an elector the right to contest such an election only on five specific grounds, not including the constitutionality of the act authorizing the election. Thus, to the extent [the appellees] rely on § 17-15-1 and [one of the appellees'] status as an elector for the proposition that [an elector] has standing to contest the results of the local-option election or the constitutionality of Act No. 2003-362, their reliance is misplaced."
904 So.2d at 1257-58.
Likewise, it appears that in this case Muhammad and Frazier rely on their status as qualified electors of Macon County as grounds for standing to challenge the constitutionality of Amendment No. 744. As we explained in Town of CedarBluff, being a qualified elector in a political subdivision that is the subject of a local-option law or constitutional amendment — be it a municipality, a county, or the State of Alabama — does not automatically confer standing to challenge the constitutionality of an act of the legislature or a constitutional amendment.
The appellees in Town of Cedar Bluff also argued that they would be injured if the election permitting the sale and distribution of alcohol within the Town of Cedar Bluff, a town with a population of between 1,300 and 1,500 residents and located in a "dry" county, was upheld and the sale and distribution of alcohol was allowed. They argued that the legislature, through the enactment of § 28-2A-3, Ala. Code 1975, had already determined that the introduction of alcohol into a town like the Town of Cedar Bluff would result in an injury to the town's "welfare, health, peace and morals."[5]
This Court held that if it were to presume that the "public welfare, health, peace and morals" of the Town of Cedar Bluff would be injured by the legalized sale and distribution of alcohol within its corporate limits, that presumption would not establish an "actual, concrete and particularized injury in fact" to the parties challenging the constitutionality of the local-option law in question. Town of Cedar Bluff,904 So.2d at 1258-59. *Page 1165 
As best as this Court can discern from Muhammad and Frazier's brief, they contend that they have been injured because "the Appellees' actions denied them the opportunity to live in a county in which a valid law on bingo game operations exists." (Muhammad and Frazier's brief, p. 6.) Such a violation of a purported right does not establish an "actual, concrete and particularized injury of fact." Town of Cedar Bluff,904 So.2d at 1260. Likewise, Frazier's assertion that he is "psychologically devastated" because he is subjected to Amendment No. 744 is insufficient to establish an injury in fact for standing purposes. We therefore conclude that neither Muhammad nor Frazier has standing to bring this action challenging the constitutionality of Amendment No. 744.
Accordingly, we conclude that Muhammad and Frazier do not have a "real, tangible interest" in the subject matter of this action, namely Amendment No. 744. Town of Cedar Bluff,904 So.2d at 1256. Likewise, we conclude that neither Muhammad nor Frazier has established an actual, concrete and particularized injury in fact that equates to "`an invasion of a legally protected interest.'" Henri-Duval,890 So.2d at 74. Thus the trial court's judgment dismissing the complaint is due to be affirmed.
In reviewing the record, we note that Frazier stated the following in his affidavit, which was submitted in support of his and Muhammad's response to Ford and Warren's motion to dismiss:
 "Amendment 744 is permitting the sheriff of Macon County to create an apparent monopoly in the electronic bingo gaming operations in the county. So far, the only entity in Macon County that can satisfy the rules for an electronic bingo operation is Victoryland [Greyhound Racing park]. I chair a nonprofit organization that is in need of the kind of resources that an electronic bingo gaming operation produces. We are unable to develop a community-based, electronic bingo operation because of the rules established by the sheriff. I am aware of other non-profit organizations, such as the NCO Nile Club and Use of Force Research Institute, that are unable to qualify for an electronic bingo operation because of the rules established by the sheriff as Amendment 744 permits him to make. Such a law prohibits due process, fairness and equal protection in an activity that was proposed and supposed to serve all of us equally."
The record indicates that the affidavit contains the only mention of Frazier's position as the chairman of a nonprofit organization. No mention of this fact is made in Muhammad and Frazier's response to Ford and Warren's motion to dismiss, nor was it mentioned during the hearing on the motion to dismiss. Likewise, Muhammad and Frazier do not make this argument to this Court on appeal. "An argument not made on appeal is abandoned or waived." Avis Rent A Car Sys., Inc. v.Heilman, 876 So.2d 1111, 1124 n. 8 (Ala. 2003). We therefore do not consider this argument in our analysis.
Because Muhammad and Frazier do not have standing to bring this action, we pretermit the remaining arguments raised on appeal.
 IV. Conclusion
Because they have not established the existence of an "actual, concrete and particularized injury," Muhammad and Frazier have failed to establish that they have standing to challenge the constitutionality of Amendment No. 744, Ala. Const. 1901. Therefore, we affirm the trial court's dismissal *Page 1166 
of their declaratory-judgment action.
AFFIRMED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] While this action was pending in the circuit court, Representative Ford was elected mayor of the City of Tuskegee, and he resigned his seat in the Alabama House of Representatives. In a special election held on March 8, 2005, Pebblin W. Warren was elected to the house seat vacated by Mayor Ford. Pursuant to Rule 25(d), Ala. R. Civ. P., Representative Warren was automatically substituted for Mayor Ford in this action.
[2] Although the referendum approving Act No. 2003-124 had already occurred when the complaint was filed, no reference was made in the complaint to Amendment No. 744.
[3] On May 28, 2004, an attorney made an appearance on behalf of Sheriff Warren and filed another motion to dismiss the complaint, even though the motion to dismiss filed on April 29, 2004, was purportedly filed on Sheriff Warren's behalf as well as on behalf of Ford.
[4] Section 43, Ala. Const. 1901, states:
 "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
[5] Section 28-2A-3, Ala. Code 1975, states, in pertinent part:
 "In the furtherance of the protections of the public welfare, health, peace and morals, the Legislature has determined that a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 7.000 or more people within a county, it being the judgment of the Legislature that municipalities with a lesser population would be unable to support and maintain such protection where such municipality is located in a dry county, whereas a municipality of 7,000 or more population would have the resources and ability to support and maintain such safeguards."